In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right-Of-Way for Legislative Route 02302, Section 2 R/W Limited Access Highways in Ross and McCandless Townships. Commonwealth of Pennsylvania, Department of Transportation, Appellant *v.* WWSW Radio, Inc.

288

Submitted on briefs, January 17, 1978, Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Bartley R. Simeral,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Chief Counsel, and *Robert P. Kane,* Attorney General, for appellant.

*J. Tomlinson Fort,* with him *Anthony J. Basinski,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY JUDGE ROGERS, March 14, 1978:

The Commonwealth of Pennsylvania, Department of Transportation (PennDOT) has appealed from a final judgment entered against it in the Court of Common Pleas of Allegheny County.[1] The judgment was on a jury's verdict in an eminent domain case.

The Commonwealth, by PennDOT, condemned 2.61 acres of a 78.1 acre tract of land owned by the appellee, WWSW RADIO, Inc. (WWSW). The parcel condemned was a narrow strip along McKnight Road, a public highway, and was taken for the purpose of improving the traffic flow along the highway. A Board of View awarded WWSW $22,000. WWSW appealed to the Court of Common Pleas of Allegheny County. At the trial, PennDOT's valuation evidence suggested damages of $11,000 and WWSW's of about $232,100. The jury rendered a verdict for WWSW in the amount of $115,000. PennDOT filed a motion for a new trial which was denied. Judgment was entered and this appeal followed. We affirm the judgment.

The first question at issue in this case emanated from the topography of WWSW's land. Most of the 78 acre tract is extremely hilly. Only two areas are relatively level; one is a high plateau on which WWSW had eight radio transmission towers and the other is a valley containing about 20 acres, the mouth of which fronted for about 235 feet on McKnight Road. The condemnation took the entire frontage in the area of the valley. WWSW contended that the condemnation effectively destroyed the use of the valley for development by depriving the valley area of access to McKnight Road. WWSW contended that the

---

[1] We quashed an earlier appeal filed before final judgment was entered below.

highest and best use of this area, destroyed by the condemnation of the frontage, was for commercial and residential development. PennDOT's position was that the valley area could not be developed commercially or residentially before the condemnation because the cost of providing access from McKnight Road to the valley area was exorbitant, making any use infeasible. It contended that the highest and best use of this area before condemnation was for the construction of more radio towers.

WWSW produced an engineering expert who testified in his opinion that before condemnation it was feasible from an engineering standpoint to develop a part of the valley area and that an adequate access road could then have been feasibly constructed.

PennDOT then produced an engineering expert in rebuttal. This witness had prepared detailed plans of an access road from McKnight Road to the valley area, as well as estimates of the cost of constructing this road. PennDOT wanted to introduce the plans for this road and an overlay showing amounts of cutting and filling which would be required to build this road. It also offered its witness's testimony regarding the costs of building this road. The trial judge, on WWSW's objection, ruled that evidence of this hypothetical road project and of the cost of carrying it out should not be admitted but that the witness could express an opinion, contrary to that of WWSW's witness, that development of the valley area was never feasible because of the costs to provide access. The Commonwealth says the trial judge erred in excluding this expert testimony and that it should have a new trial for this reason. We disagree.

Section 603 of the Eminent Domain Code[2] provides that in the determination of the fair market value of a property before condemnation, the condemnee is not

[2] Act of June 22, 1964 (Spec. Sess.), P.L. 84, 26 P.S. §1-603.

limited to the present use of the property but may also offer testimony of the highest and best reasonably available use of the property at the time of taking. Testimony as to highest and best use, however, is subject to several limitations. Such testimony will not be admitted unless the condemnee has established that the tract in question is physically adaptable for such a use and that there is a market for property available for such use at the time of condemnation. *Stoner v. Metropolitan Edison Co.*, 439 Pa. 333, 266 A.2d 718 (1970). In addition, the condemnee must show that the need for property for such use is based upon more than mere speculation. *Pennsylvania Gas and Water Co. v. Pennsylvania Turnpike Commission,* 428 Pa. 74, 236 A.2d 112 (1967). As was noted in *Stoner v. Metropolitan Edison Co., supra,* "a property owner may expect compensation for reasonable certainties inherent in the present, [but] he may not recover for remote chances or future possibilities and may not submit evidence to the jury based on a speculative contingency." 439 Pa. at 338, 266 A.2d at 721. Thus, evidence of particular but hypothetical uses of a property has consistently been held to be inadmissible for the purpose of proving the highest and best use of land. *See Chiorazzi v. Commonwealth,* 411 Pa. 397, 192 A.2d 400 (1963) (landowner's testimony as to his idea or concept of a future 66 unit apartment development, held properly excluded) ; *E. M. Kerstetter, Inc. v. Commonwealth,* 404 Pa. 168, 171 A.2d 163 (1961) (plans of subdivision into lots not approved until after condemnation, held improperly admitted). Evidence of particular but hypothetical uses is not admissible because this kind of evidence is speculative, remote and fanciful. There is no more reason for admitting such evidence when offered by the condemnor for the purpose of depreciating value, than when it is offered by the condemnee for the purpose of enhancing value. *See De-*

*partment of Transportation v. Prescol, Inc.*, 22 Pa. Commonwealth Ct. 97, 101 n.2, 347 A.2d 729, 731 n.2 (1975).

We emphasize that PennDOT was not prevented from adducing expert opinion evidence that the cost of any access was prohibitive rendering the valley useless for commercial or residential development. Judge MAURICE LOUIK, who ably tried the case, ruled only that detailed plans for, and the cost of, a particular but hypothetical road which was never proposed to be built by anyone should not be admitted.

We add that the admission of expert opinion evidence is a matter for the discretion of the trial judge, to be disturbed only when discretion is clearly abused. *Nixon Hotel, Inc. v. Redevelopment Authority of the City of Butler*, 11 Pa. Commonwealth Ct. 519, 315 A. 2d 366 (1974), *cert. denied*, 419 U.S. 842 (1974). PennDOT's evidence concerning the hypothetical road is clearly the kind which takes juries on excursions far from the points in issue. The points here in issue were: to what use, if any, could the valley be put; was there a market for property for this use; and what effect did the condemnation have on this use and the property's value. The issue was not the merits of a plan for, and the costs of, an access road designed by PennDOT's engineering witness.

PennDOT also says it should have had a new trial because the trial judge erred by reading to the jury the following point for charge made by the condemnee:

Plaintiff, WWSW RADIO, INC., on the date of condemnation, was entitled to use its property for commercial and residential purposes in accordance with the zoning ordinance then in effect in ROSS Township. The Sketch Master Plan did not limit the right of WWSW RADIO, INC. to use the property in accordance with the Ross Township zoning ordinance, but was

merely a proposed plan that [is][3] consulted by the Commissioners of Ross Township in the event that WWSW RADIO, INC. asked for an exception, a variance, or permission for a conditional use such as a townhouse.

PennDOT contends that this charge was contrary to the clear weight of the evidence. Again we disagree with the appellant.

The zoning ordinance of Ross Township effective on the date of taking was Ordinance No. 446 of 1949. Under Ordinance 446, that part of WWSW's property located along and nearest McKnight Road was in the commercial A zoning districts where a variety of commercial uses were permitted. The remainder of the property was zoned Residential B, a district in which single and two-family residences were permitted uses. Thus, charge number six correctly states that on the date of taking, WWSW was entitled to use its property for residential and commercial purposes.

There was also in existence at the time of the taking a document called the Ross Township Sketch Master Plan, described as the officially adopted township plan. WWSW's land along McKnight Road was shown on the Sketch Master Plan as being proposed for inclusion in a zoning district called "limited access commercial," more restrictive than the Commercial A zoning in which WWSW's was in fact located at the time of the take. The township's zoning officer testified that the Sketch Master Plan had no present effect on permitted uses but was consulted only when landowners wanted zoning amendments or variances. The Master Sketch Plan in short did not regulate land uses. This is exactly what Judge LOUIK charged. PennDOT's complaint on this score is clearly ground-

---

[3] The condemnee's proposed point for charge used the phrase "might be" at this place. The trial judge substituted the word "is."

less and it is not bolstered by the fact that on November 6, 1972, almost six months after the condemnation, the township amended the zoning ordinance placing WWSW's McKnight Road frontage in the limited access commercial district. The issue was the highest and best reasonably available use of the land at the time of the taking; the jury was correctly told that WWSW's right to use its land as permitted by the zoning regulation in effect at the time of the taking was not limited by the Master Sketch Plan.

Judgment affirmed.

### ORDER

AND Now, this 14th day of March, 1978, the judgment appealed from in the above captioned matter is affirmed.