Robert W. McGAFFIC, Executor of the Estate of Eleanor L. McGaffic, dec'd and Robert W. McGaffic, in his own right, George G. Love, John W. Miller, Individually and as Executor of the Estate of Anita L. Miller, and the Estate of Anita L. Miller

v.

The REDEVELOPMENT AUTHORITY OF the CITY OF NEW CASTLE and the City of New Castle.

The Redevelopment Authority of the City of New Castle, Appellant.

Robert W. McGaffic, Executor of the Estate of Eleanor L. McGaffic, dec'd and Robert W. McGaffic, in his own right, George G. Love, John W. Miller, Individually and as Executor of the Estate of Anita L. Miller, and the Estate of Anita L. Miller, Appellants,

v.

The Redevelopment Authority of the City of New Castle and the City of New Castle.

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1999.

Decided June 7, 1999.

Reargument Denied Aug. 2, 1999.

Jonathan Solomon, New Castle, for appellants.

Louise A. Geer, New Castle, for appellees.

Before PELLEGRINI, J., KELLEY, J., and JIULIANTE, Senior Judge.

KELLEY, Judge.

Before this Court are the consolidated appeals filed by Robert McGaffic, as the executor of the estate of Eleanor McGaffic, deceased, and in his own right, George G. Love, John W. Miller, individually and as executor of the Estate of Anita L. Miller, and the estate of Anita L. Miller (collectively, the Condemnees) and the Redevelopment Authority of the City of New Castle (Redevelopment Authority) from a final order of the Court of Common Pleas of Lawrence County (trial court) which

awarded the Condemnees delay compensation and special damages for the *de facto* taking of their property. We affirm in part and modify in part.

The Condemnees were owners of a commercial building known as the Centennial Building (the property) in New Castle, Pennsylvania. In 1968, the property was included in the Redevelopment Authority's "Central Area Urban Renewal Plan." The Redevelopment Authority advised the Condemnees and their tenants that the property would be acquired, the tenants relocated, and the building demolished as part of the redevelopment of downtown New Castle.

By June 1973, ninety-six percent of all properties located within the project area had been acquired by the Redevelopment Authority and of the 212 buildings slated to be demolished, all but five were taken and destroyed. In 1978, the Redevelopment Authority publicly announced that it no longer intended to take the subject property.

On October 31, 1978, the Condemnees filed a petition for the appointment of viewers, in which they alleged that the Redevelopment Authority had engaged in conduct that constituted a *de facto* taking of the property. In response, the Redevelopment Authority filed preliminary objections to the petition.[1] The trial court conducted a lengthy evidentiary hearing to determine whether a *de facto* taking had taken place. By order and opinion dated October 8, 1986, the trial court dismissed the Redevelopment Authority's preliminary objections upon finding that a *de facto* taking of the Condemnees' property had occurred on April 12, 1973 for which the payment of just compensation is required. The trial court then named a board of viewers to determine the amount

---

1. Preliminary objections are the exclusive method for raising legal and factual objections to a petition for appointment of viewers which alleges a *de facto* taking. *Holmes Protection of Pittsburgh, Inc. v. Port Authority of Allegheny County,* 90 Pa.Cmwlth. 342, 495 A.2d 630 (1985), *petition for allowance of appeal denied,* 519 Pa. 656, 546 A.2d 60 (1988). A trial court may not dismiss preliminary objections without first conducting an evidentiary hearing to determine whether a *de facto* taking took place. *Id.*

of compensation to be awarded to the Condemnees. The Redevelopment Authority appealed the trial court's decision to this Court, which affirmed.[2]

Thereafter, the matter proceeded before the board of viewers. Following evidentiary hearings, the board of viewers filed its report on October 21, 1994. In the report, the board awarded Condemnees general damages for the fair market value of the property as of April 12, 1973, distributed the damages among the Condemnees, and directed that delay compensation be paid from the date of the *de facto* taking, April 12, 1973. On October 27, 1994, the Redevelopment Authority filed an appeal from the board of viewer's report on the grounds that the board of viewers improperly and incorrectly awarded damages. In its appeal, the Redevelopment Authority set forth objections to the report challenging the apportionment of condemnation damages among the Condemnees and the board's failure to credit for rentals received after the date of taking. The Redevelopment Authority also filed a demand for a jury trial.

Before the disposition of the Redevelopment Authority's objections, the parties entered into a stipulation, which was approved by the trial court on December 2, 1994. Pursuant to this stipulation, the Redevelopment Authority paid $106,666.66 to the Condemnees on January 24, 1995 and possession of the property was delivered to the Redevelopment Authority on December 5, 1994.

Following oral argument and the submission of briefs on the Redevelopment Authority's objections, the trial court dismissed the objections by order dated May 10, 1995. The Redevelopment Authority filed an appeal with this Court, wherein the Redevelopment Authority attempted to challenge, in addition to the aforementioned objections, the date from which delay compensation would be assessed. Upon determining that the Redevelopment Authority failed to raise this issue before the trial court, we concluded that the issue was waived for purposes of appellate review. By decision dated June 10, 1996, we affirmed the trial court's decision in an unpublished opinion.[3]

The trial court then ordered the Redevelopment Authority's appeal from the award of damages to proceed by order dated July 17, 1997. The parties agreed to waive the demand for jury trial. A non-jury trial was held in September and October of 1997.

By order dated September 10, 1997, the trial court awarded Condemnees $230,000 as general damages for the fair market value of the property taken on April 12, 1973. In addition to the general damages award of $230,000 and as adjusted by the partial payment made by the Redevelopment Authority of $106,666.66 on January 24, 1995, the trial court also awarded Condemnees $949,386.43 by order dated January 14, 1998.[4] This sum included delay compensation on the outstanding principle balance of the property's fair market value,[5] real estate taxes and sanitary sewer

**2.** *McGaffic v. Redevelopment Authority of the City of New Castle,* 120 Pa.Cmwlth. 199, 548 A.2d 653 (1988), *petition for allowance of appeal denied,* 523 Pa. 644, 565 A.2d 1168 (1989) (*McGaffic I* ).

**3.** *Redevelopment Authority of the City of New Castle v. McGaffic,* 677 A.2d 1333 (Pa. Cmwlth. No. 1273 C.D.1995, filed June 10, 1996), *petition for allowance of appeal denied,* 548 Pa. 640, 694 A.2d 624 (1996) (*McGaffic II* ).

**4.** The total sum awarded was $1,179,386.43.

**5.** The trial court determined that Condemnees were entitled to delay compensation in the amount of $635,884.42. In arriving at this sum, the trial court calculated the interest due each month from April 1973 through December 1997 by multiplying the applicable outstanding principle balance by the prevailing commercial loan rate in effect each month and dividing the total by 12 to determine the monthly interest amount. The trial court determined that the outstanding principle balance during the period of April 1973 through January 23, 1995 was $230,000. Commencing January 24, 1995, as a result of the pay-

charges paid after the date of taking (special damages) with delay compensation, attorney's fees, and reimbursement for costs and expenses of litigation. The trial court awarded general damages for the fair market value of the property with delay compensation calculated at the commercial loan rates of interest prevailing during the period in which payment was detained, which was equivalent to Mellon Bank's prime interest rate plus two percent, not compounded. The trial court awarded special damages for real estate taxes and sanitary sewer charges with delay compensation calculated at the simple statutory rate of six per cent per annum.

Timely post trial motions were filed. In May 1998, Condemnees filed a praecipe for entry of judgment pursuant to Pa. R.C.P. No. 227.4(1)(b).[6] On May 26, 1998, judgment was entered by the prothonotary in favor of Condemnees and against the Redevelopment Authority on the verdict entered January 14, 1998.

■ On June 24, 1998, at Docket No. 1690 C.D.1998, the Redevelopment Authority filed the present appeal over whether the trial court abused its discretion by proceeding in a manner inconsistent with the procedures of the Eminent Domain Code (Code).[7] On June 24, 1998, at Docket No. 1691 C.D.1998, the Condemnees filed an appeal challenging the trial court's failure to award delay compensation with compound interest and the use of the statutory rate of six percent on the special

damages. By order of this Court dated September 4, 1998, these two appeals were consolidated for review. The Condemnees have been designated as the appellants. Therefore, we will first address the issues raised by Condemnees.[8]

I. CONDEMNEES' APPEAL

Condemnees have raised the following two issues for our review:

1. Whether the trial court erred in its order of January 14, 1998 by failing to award delay compensation at compound interest.

2. Whether the trial court erred in its order of January 14, 1998 in awarding delay compensation on the special damages of real estate taxes and sanitary sewer charges at the statutory rate of six percent per annum, instead of at the same rate used for general damages.

■ Condemnees first contend that the trial court erred in failing to award delay compensation at compound interest. We disagree.

Section 601 of the Code, 26 P.S. § 1–601, provides that a "condemnee shall be entitled to just compensation for the taking, injury or destruction of his property." "Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest re-

---

ment of $106,666.66 tendered by the Redevelopment Authority, the outstanding principle balance was adjusted $123,333.34.

6. Rule 227.4 provides that the prothonotary, upon praecipe of a party, shall:
(1) enter judgment upon the verdict of a jury or the decision of a judge following a trial without a jury, or enter the decree nisi as the final decree, if
(a) no timely post-trial motion is filed; or
(b) one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of the first motion. A judgment entered pursuant to this subparagraph shall be final as to all

parties and all issues and shall not be subject to reconsideration.

7. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101–1–903.

8. Appellate review of a trial court's decision in an eminent domain matter is limited to a determination of whether the trial court abused its discretion or committed an error of law and whether the findings and conclusions are supported by sufficient evidence. *Appeal of Waite*, 163 Pa.Cmwlth. 283, 641 A.2d 25, *petition for allowance of appeal denied*, 539 Pa. 657, 651 A.2d 543 (1994).

maining immediately after such condemnation and as affected thereby, *and such other damages as are provided in this code.*" Section 602 of the Code, 26 P.S. § 1–602 (emphasis added). "Such other damages" include delay compensation as provided for in Section 611 of the Code, 26 P.S. § 1–611. *See Hughes v. Department of Transportation*, 514 Pa. 300, 523 A.2d 747 (1987).

Section 611 of the Code sets forth a condemnee's entitlement to delay compensation providing:

The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation, nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. *Compensation for delay in payment shall, however, be paid at the rate of six per cent per annum* from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation: Provided, however, That no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict.

(Emphasis added). In *Hughes*, the Supreme Court considered whether the stat-utory rate of six percent was "just compensation" as mandated by the United States Constitution [9] and Pennsylvania Constitution.[10] In its decision, the Supreme Court stated that:

What is "just compensation" cannot be determined by the exclusive fiat of the General Assembly, for like all others they cannot be the judge in their own case. The determination of what is "just" between the Commonwealth and a condemnee is the function of the judiciary.

*Id.* at 306, 523 A.2d at 750. While managing to preserve the constitutionality of the Section 611, the Supreme Court ultimately agreed with the trial court's determination that the fixed statutory rate did not provide "just compensation" to Condemnees and affirmed the trial court's utilization of a commercial loan rate of interest prevailing during the detention period in question in calculating the award of delay compensation. *Id.*

The interest rate utilized by the trial court in *Hughes*, however, was not compounded. The Supreme Court specifically stated that it had "no intention of striking the General Assembly's policy against imposing double interest on an award." [11] *Id.* at 312, 523 A.2d at 753. Double interest or compound interest is interest that is paid not only on the principal, but also on any interest accrued. Black's Law Dictionary 286 (6 th Ed.1990). Thus, despite the standard application of compound interest in the commercial banking industry, an award of compound interest on delay compensation has not been permitted under Pennsylvania law. We, therefore, conclude that the trial court did not err in awarding Condemnees delay compensation calculated at a non-compounded rate of interest.

**9.** U.S. Const. Amend. V.

**10.** Pa. Const. Art. 1, § 10; Pa. Const. Art. 10, § 4.

**11.** As the comment to section 611 of the Code states, "[t]he condemnee is only entitled to one 6% on his award. He would not be entitled to the 6% and then interest on that 6%. In other words, it is not intended by this section to have interest being paid on delay damages."

■ Condemnees next contend that the trial court erred by awarding delay compensation on the special damages of real estate taxes and sanitary sewer charges at the statutory rate of six per cent per annum, instead of at the same rate applied to general damages for the fair market value of the property. We agree.

In support of their position that delay compensation for the payment of special damages should be calculated at the same rate as delay compensation for general damages, Condemnees rely upon *BOC Group, Inc. v. Department of Transportation,* 549 Pa. 439, 701 A.2d 535 (1997). In *BOC,* the trial court awarded delay compensation for special damages "at the market rate." On appeal to this Court, we affirmed the trial court's award of delay compensation on special damages. However, we vacated the award of interest and remanded the matter to the trial court for a determination of the actual interest rate to be applied to the special damages because the trial court merely awarded interest "at the market rate" without fixing that rate at a specific percentage.

On appeal to the Supreme Court, the Court considered the issue of whether delay compensation was recoverable on special damages. In its analysis, the Supreme Court noted that Section 611 of the Code does not specifically address the issue of whether delay compensation is recoverable on special damages because it does not distinguish the various kinds of damages recoverable under the Code. The Supreme Court saw no reason to draw any distinctions. The Supreme Court reasoned that the purpose of delay compensation is to compensate for delays in payment after a taking and that just compensation includes compensation for the value of the property as well as special damages for displacement. On this basis, the Supreme Court held that condemnees *may* recover compensation for delays in the payment of special damages under the Section 611 of the Code.

However, the Court determined that the condemnee therein was not entitled to any delay compensation since the condemnor never took physical possession of the property and there was no evidence that the condemnee was deprived of the property's use. As a result, the Supreme Court never addressed the issue of the applicable rate to be used in calculating delay compensation on special damages.

■ Pursuant to *Hughes,* the trial court, as the finder of fact, must fix the rate of interest to be used in calculating delay compensation. Although the method of determining the interest rate may vary, the rate should be one which a condemnee might reasonably have received had he been able to invest the total amount of compensation on the date of taking in order to provide just compensation. *Hughes.*

In the case before us, the trial court determined that the statutory rate of six per cent did not provide Condemnees with just compensation for the taking. The trial court awarded delay compensation for the outstanding principal balance for the fair market value of the property owed to Condemnees calculated at the commercial loan rates of interest prevailing during the period in which payment was detained, which was equivalent to Mellon Bank's prime interest rate plus two percent. However, instead of applying this rate to the award of special damages for real estate taxes and sanitary sewer charges, the trial court calculated delay compensation on these damages at the statutory rate of six per cent per annum.

■ Where a trial court determines that the statutory rate of six per cent does not provide just compensation for the value of the property and awards another rate, this same rate must be used in the calculation of delay compensation for special damages. Otherwise, we are drawing a distinction between damages which the Supreme Court in *BOC* saw no reason to draw. We, therefore, conclude that the trial court

erred in awarding delay compensation at two different rates. Accordingly, we must vacate this portion of the trial court's order and remand for the limited purpose of determining the amount of delay compensation on special damages calculated at the commercial loan rates of interest prevailing during the period in which the payment was detained.

## II. REDEVELOPMENT AUTHORITY'S APPEAL

The Redevelopment Authority has raised the following issues for our review:

1. Whether the trial court erred and abused its discretion in relying upon the "full and normal use" test in its analysis of delay compensation instead of relying on the "date of relinquishment" test.

2. Whether the trial court disregarded the rules of evidence and thereby abused its discretion when it relied only upon the testimony of the Condemnees' expert witness over other valuations offered by the Redevelopment Authority.

3. Whether the trial court erred and abused its discretion by awarding delay compensation on items for which interest is not authorized by the Code.

4. Whether the trial court abused its discretion by proceeding in a manner inconsistent with the procedures of the Code.

◼ The Redevelopment Authority contends that the trial court erred and abused its discretion in relying upon the "full and normal use" test of *Hughes* in its analysis of the Section 611 of the Code, instead of relying on the "date of relinquishment" test. We disagree.

Section 611 of the Code provides compensation to condemnees for the delay in payment from the time that they relinquish possession of a condemned property. In *Hughes*, the Supreme Court interpreted the word "possession" to comport with the concept of just compensation, noting that if land could not be put to its ordinary use because of a condemnation, such a result, without adequate compensation, would be an unjust taking and a waste of the use of that land. On this basis, the Supreme Court held:

> [W]here a declaration of taking deprives a landowner of the full and normal use of his property, as established by the use to which his property was devoted prior to the declaration, then that landowner shall no longer be considered 'in possession' within the meaning of section 611, and the condemnee may claim delay damages from the date of the declaration of taking.

*Hughes*, 514 Pa. at 309, 523 A.2d at 752.

Here, the trial court, in its decision of October 8, 1986, found that the actions of the Redevelopment Authority substantially deprived Condemnees of the full and normal use of their property as to constitute a *de facto* taking on April 12, 1973. Although the Redevelopment Authority in its brief attempts to challenge this finding by asserting that the Condemnees continued to remain in possession until the date of relinquishment because they were still receiving some value or benefit from the property, the trial court's finding was previously challenged and affirmed on appeal. *McGaffic I*, 548 A.2d 653. Moreover, the board of viewers, in its report filed October 21, 1994, determined that delay compensation shall be calculated from the date of the *de facto* taking. Although physical possession of the property was not actually "relinquished" until December 12, 1994, the operative date for the calculation of delay compensation would be, according to the reasoning in *Hughes* and its underlying equitable considerations, the date of the *de facto* taking, not the date of relinquishment, as Condemnees were deprived of the full and normal use of their property. We, therefore, conclude that the trial court did not err or abuse its discretion in its application of the "full and normal use" test in determining that Condemnees were

entitled to delay compensation from the date of the *de facto* taking.

Next, the Redevelopment Authority contends that the trial court disregarded the rules of evidence as set forth in Section 705 of the Code, 26 P.S. § 1–705, and thereby abused its discretion when it relied upon the testimony of Condemnees' expert witness, who was not state certified, had no personal knowledge of the pre-condemnation condition of the property, and whose testimony was equivocal. We disagree.

The trial court, in a condemnation proceeding should, as a preliminary matter, determine the competency of witnesses testifying as to value. *Hope v. Philadelphia & W.R. Co.*, 211 Pa. 401, 60 A. 996 (1905). Section 705 of the Code provides that a "qualified valuation expert" may testify as to the valuation of property. However, the Code does not define "qualified valuation expert" or provide any guidance as to the necessary qualifications of a valuation expert except to provide that, "[i]f otherwise qualified, a valuation expert shall not be disqualified by reason of not having made sales of property or not having examined the condemned property prior to the condemnation, provided he can show he has acquired knowledge of its condition at the time of the condemnation."[12] Section 705(6) of the Code, 26 P.S. § 1–705(6). Guidance, however, can be found outside the Code in the Real Estate Appraisers Certification Act (Act).[13]

As originally enacted in 1990, Section 3 of the Act, 63 P.S. § 457.3, made it unlawful "for any person to hold himself out as a State-certified real estate appraiser or to perform appraisals required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (Public Law 101–73, 103 Stat. 183)" without a valid certification from the State Board of Certified Real Estate Appraisers. In 1996, this section was amended[14] to make it unlawful, as of August 31, 1998, for any person to perform real estate appraisals in non-federally related transactions unless that person holds a valid certificate from the State Board to perform real estate appraisals.

The determination of whether a witness is a "qualified valuation expert" is a matter within the sound discretion of the trial court. *Department of Transportation v. WWSW Radio, Inc.*, 34 Pa. Cmwlth. 287, 383 A.2d 552 (1978). Absent a clear abuse of discretion, such a determination will not be disturbed on appeal. *Marx Stationery & Printing Co. v. Redevelopment Authority of the City of Philadelphia*, 675 A.2d 769 (Pa.Cmwlth.1996). Once a determination is made that a witness is a qualified valuation expert, the credibility and the evidentiary weight of that testimony is reserved for the finder of fact. *In re Condemnation by Department of Transportation*, 93 Pa.Cmwlth. 403, 501 A.2d 1172 (1985).

Here, Condemnees presented the testimony of Donald Nicholson, whom the trial court found competent to testify as an expert valuation witness. Nicholson, a licensed real estate broker, had completed over 750 appraisals. Nicholson based his appraisal on the fair market values of the property before and after condemnation utilizing three traditional approaches to value. The Redevelopment Authority objected to Nicholson's qualifications on the grounds that Nicholson was not state-certified and had no first-hand knowledge of the property's pre-condemnation condition.

---

**12.** The comment to Section 705 of the Code states that the purpose for this clause is to provide that an otherwise qualified expert may still testify even though he has not examined the property prior to the condemnation since this is seldom possible under present condemnation proceedings. However, the expert must have acquired knowledge of the property and its condition at the time of taking; this can be done through the use of photographs and other data available to him.

**13.** Act of July 10, 1990, P.L. 404, *as amended*, 63 P.S. §§ 457.1–457.19.

**14.** Act of July 2, 1996, P.L. 460.

With regard to state certification, although Nicholson was not a state-certified real estate appraiser under the Act, Section 3 of the Act requiring state certification did not apply to nonfederally related appraisals until after August 31, 1998. At the time when Nicholson performed his appraisal, which was completed August 15, 1997, Section 3 of the Act only applied to appraisals in federally related transactions, which this was not. While such certification would surely have added to Nicholson's qualifications, the lack of certification did not operate to disqualify him.

With regard to Nicholson's alleged lack of "first-hand knowledge," an examination of the record reveals that Nicholson did in fact have first-hand knowledge of the pre-condemnation condition of the property. Supplemental Record (S.R.) 151a. Nicholson testified that he had visited the property on a number of occasions prior to the condemnation. S.R. 151a. Nicholson further testified that he was familiar with the general physical layout and physical condition of the property in 1973 as well as with the general condition of downtown New Castle. S.R. 151a. Although Nicholson had not "examined" the property prior to condemnation for purposes of conducting an appraisal, Nicholson testified that he had acquired knowledge of the property from records of the property, blue prints, and from the testimony of one of the building's owners, Robert McGaffic. S.R. 149a, 152a. We, therefore, conclude that Nicholson was not disqualified under Section 705(6) of the Code.

■ The Redevelopment Authority further asserts that Nicholson's testimony was so equivocal as to be legally insufficient.[15] Specifically, the Redevelopment Authority alleges that statements made by Nicholson indicate that he was not able to completely exclude the imminence of condemnation in his appraisal. S.R. 276a–278a.

■ Section 604 of the Code, 26 P.S. § 1–604, provides that "[a]ny change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value." Testimony of a valuation witness which improperly considers the depreciating effect of the imminence of condemnation should be stricken. *Redevelopment Authority of the City of Philadelphia v. Cohen,* 31 Pa.Cmwlth. 173, 375 A.2d 881 (1977).

■ An examination of the Nicholson's testimony in its entirety reveals that the alleged equivocal statements were taken out of context. Nicholson explained at length how he arrived at his opinion of the property's fair market value. S.R. 149a–190a. In his testimony, Nicholson carefully considered only the factors that existed prior to the imminence of condemnation. Recognizing that he may not have been able to completely exclude the imminence of condemnation from his appraisal, Nicholson nevertheless testified that he did not consider the depreciating effect of imminence of condemnation in his opinion and explained how he factored out imminence of condemnation from his appraisal.[16] We, therefore, conclude that Nicholson's testimony was not equivocal.

---

**15.** "Testimony which is so uncertain or inadequate or equivocal or ambiguous or contradictory as to make a verdict of a jury or findings of a trial judge or the findings of an administrative fact finder mere conjectures is not adequate in lawsuits or substantial in administrative proceedings as a matter of law." *Novaselec v. Workmen's Compensation Appeal Board,* 16 Pa.Cmwlth. 550, 332 A.2d 581, 583–584 (1975).

**16.** For example, Nicholson testified that the actual rentals achieved by the property in April 1973 were depressed below the market rates due to the effects of condemnation activity. S.R. 175a. For this reason, Nicholson disregarded these actual rentals and instead

Although the Redevelopment Authority's expert, John McClure, was certified under the Act and had examined the property prior to condemnation, the trial court simply found the testimony and valuation appraisals offered by Nicholson to be more credible than that of McClure. The Redevelopment Authority's contentions that McClure was more qualified than Nicholson and therefore his testimony should have been given more credence really go only to weight of the evidence, which is beyond the scope of our review. *Cohen v. Redevelopment Authority of the City of Lancaster*, 425 Pa. 441, 229 A.2d 744 (1967). We, therefore, conclude that the trial court did not err or abuse its discretion in admitting, and ultimately relying upon, Nicholson's testimony instead of the testimony of McClure.

Next, the Redevelopment Authority contends that the trial court erred and abused its discretion by awarding delay compensation on special damages from the date of the *de facto* taking when such interest is not authorized by the Code. We disagree.

As discussed above, the Supreme Court in *Hughes* and *BOC* has authorized the award of interest as compensation for the delay in payment of damages for the *de facto* taking, including special damages incurred as a result of the taking, from the date of the *de facto* taking. As we have already addressed this issue at length, we conclude that the trial court did not err or abuse its discretion in awarding delay compensation on these damages from the date of the *de facto* taking.

Lastly, the Redevelopment Authority contends that the trial court erred and abused its discretion by proceeding in a manner inconsistent with the procedures of the Code. The Redevelopment Authority contends that questions as to the date from which delay compensation should be awarded can be raised anew in a *de novo*

hearing and that by failing to conduct such a hearing, the trial court has clearly erred. We disagree.

Eminent domain proceedings are governed exclusively by the Code. Section 303 of the Code, 26 P.S. § 1–303. Pursuant to Section 511 of the Code, 26 P.S. § 1–511, the board of viewers is ascribed with the initial duty of determining the damages at issue *as well as the date from which damages for delay shall be calculated.*

The board of viewers is required to file their report within thirty days of their final hearing. Section 513 of the Code, 26 P.S. § 1–513. Ten days before the filing of their report, the board of viewers must mail a copy of the report to all parties of record with notice of the date of the intended filing. *Id.* If no appeal is filed within thirty days from the date the report is filed, the award is final. *Id.*

Any party aggrieved by the decision of the board of viewers may appeal to the trial court. Section 515 of the Code, 26 P.S. § 1–515. Section 515 provides that the "appeal shall raise *all* objections of law or fact to the board of viewers' report." (Emphasis added.) Section 516 of the Code, 26 P.S. § 1–516 further provides that the "appeal *shall* set forth objections, if any, to the board of viewers' report, *other than to the amount of the award.*" (Emphasis added.) As explained in the comment to Section 516, this changed the previous procedure by combining in one proceeding, designated as an "appeal," the practice of exceptions as to questions of law and the filing of a separate appeal as to questions of fact.[17]

Despite this statutory change, the "objections" procedures relative to a board of viewers' report remain the same as the former "exceptions" procedures under various former acts. *Kellman Trust*

---

utilized rental rates that would have been obtained by a comparable property in a market unaffected by the imminence of condemnation. *Id.*

17. The comment further explains that the procedure was altered as there was confusion in the courts as to whether exceptions or appeal was the proper procedure.

*Fund v. Department of Transportation,* 24 Pa.Cmwlth. 102, 354 A.2d 583 (1976). In other words, objections which raise questions of improper board procedures or legal issues (formerly exceptions) must be settled by the trial court preliminarily in a final order. *Department of Transportation v. Yudacufski,* 83 Pa.Cmwlth. 609, 479 A.2d 635 (1984). The purpose is to "enable a trial court to dispose of legal issues questioned by the parties to the litigation in the hope that those parties, otherwise satisfied with the amount of the award, would then be satisfied with the board's report and not demand trial *de novo.*" *Kellman,* 354 A.2d at 591, n. 8. "Objections" which raise questions of fact (formerly appeals) must be reserved for a trial *de novo. Condemnation by the Pennsylvania Turnpike Commission,* 548 Pa. 433, 698 A.2d 39 (1997); *Kellman.* It is up to the trial court to separate the issues of law from issues of fact. *Kellman.*

■■■ All "objections," other than the amount of the award, raised in the appeal are to be determined preliminarily by the trial court. Section 517 of the Code, 26 P.S. § 1–517. If an issue is properly raised by an objection, the trial court may confirm, modify, change or refer the report back to the board of viewers. *Id.* A decree confirming, modifying or changing the report constitutes a final order, subject to appeal.[18] *Id.* Such a decree, however, is nothing more than a ruling by the trial court on the "objections" raised to the report and does not deprive an aggrieved party to a trial *de novo* on the question of damages. If an appeal is filed to the report, but no specific objections to the board of viewers' report are raised in the appeal, an aggrieved party reserves only his right to a trial *de novo* on the limited issue of damages. *Jennings v. Department of Transportation,* 38 Pa.Cmwlth. 206, 395 A.2d 582 (1978).

Here, the board of viewers, in its report, determined that delay compensation shall be calculated from the date of the *de facto* taking, April 12, 1973. While the Redevelopment Authority filed an appeal from the board of viewer's report which set forth a number of objections to the report, the Redevelopment Authority did not raise an objection to the board's determination that delay compensation shall be paid from the date of the *de facto* taking. The trial court dismissed the Redevelopment Authority's objections. On appeal to this Court, the Redevelopment Authority attempted to challenge the board's determination that delay compensation shall be calculated from the date of the *de facto* taking. As this issue was not raised as an "objection" before the trial court, we concluded that the issue was waived for purposes of appellate review and affirmed the order of the trial court. *McGaffic II.*

The Redevelopment Authority now contends that the issue was only waived for purposes of *that* appellate review and that when the matter returned to the trial court for a trial *de novo,* the trial court should have considered the issue *de novo.* Even if this Court were to assume, for purposes of *arguendo,* that the board of viewer's determination that delay compensation shall be calculated from the date of the *de facto* taking was a mixed question of law and fact, the fact remains that the Redevelopment Authority failed to set forth an objection. By failing to raise an objection to the board of viewers' determination, the Redevelopment Authority not only failed to preserve the issue for appellate review from the trial court's final order dismissing the Redevelopment Authority's objections, but also failed to preserve the issue for the subsequent trial *de novo.* Contrary to the assertions made by the Redevelopment Authority, a *de novo* proceeding on an appeal from a board of viewers' report is not an opportunity for an aggrieved party to re-litigate the entire case. Rather, the trial *de novo* in this context is limited to the amount of the award of damages and

---

**18.** We note, however, that if the trial court refers the matter back to the board of viewers, the order is interlocutory, and not appealable. *Kellman.*

any objections of fact which have been appropriately raised in the appeal from the viewers' report and reserved by the trial court.[19] We, therefore, conclude that the trial court's disposition of this case was not in a manner inconsistent with the Code.

Accordingly, we vacate the portion of the trial court's order awarding delay compensation on special damages at the statutory rate of six per cent per annum and remand to the trial court for a determination of delay compensation on special damages calculated at the commercial loan rates of interest prevailing during the period in which payment was detained (Mellon Bank's prime interest rate plus two percent, not compounded). In all other respects, we affirm.

### ORDER

AND NOW, this 7th day of June, 1999, the order of the Court of Common Pleas of Lawrence County, dated January 14, 1998, at Docket No. 160 of 1978, M.D., is vacated in part in accordance with the foregoing opinion and remanded to the trial court for a determination of delay compensation on special damages calculated at the commercial loan rates of interest prevailing during the period in which payment was detained (Mellon Bank's prime interest rate plus two percent, not compounded). In all other respects, the order of the trial court is affirmed.

Jurisdiction relinquished.

---

19. Alternatively, the Redevelopment Authority argues that the date from which delay calculation is to be awarded should not have even been litigated by the board of viewers or the trial *de novo* until after a proposed distribution of damages is before the trial court pursuant to section 521 of the Code, 26 P.S. § 1–521. This argument is in contravention to Section 511 of the Code which provides that the board of viewers shall file a report which "shall" include "the date from which damages for delay shall be calculated."