Richard KING, Appellant

v.

**WEST PENN POWER COMPANY, trading as Allegheny Power.**

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 2008.

Decided April 9, 2008.

Albert G. Feczko, Jr., Pittsburgh, for appellant.

Bernard P. Matthews, Jr., Greensburg, for appellee.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Richard King (Condemnee) appeals from the August 30, 2007, order of the Court of Common Pleas of Westmoreland County (trial court), which, pursuant to a motion in limine, excluded the testimony of David A. Reese, Gene Lakin and Edward S. Nasuti, PE, and limited the testimony of Condemnee regarding the highest and best use of Condemnee's privately-owned airport (the Property). We reverse and remand.

West Penn Power Company, trading as Allegheny Power, (Condemnor) condemned a portion of the Property, pursuant to the former Eminent Domain Code (Code),[1] for an electric transmission line that had been approved by the Pennsylvania Public Utility Commission (PUC). The trial court appointed viewers, and, after a hearing, the viewers determined that the highest and best use of the Property was for residential development. Condemnee filed an appeal with the trial court.

Following discovery, the parties filed pre-trial statements. In his pre-trial statement, Condemnee indicated his intention to present Reese, Lakin, Nasuti and himself as damage witnesses. Condemnee planned to testify about his twelve-year plan to expand the Property by lengthening the airport runway, *inter alia*, so that his "general services airport" could become a "business services airport," capable of accommodating commercial jets. Lakin, Executive Director of the Westmoreland County Airport Authority, and Nasuti, an aviation consultant, were to testify about the feasibility of Condemnee's expansion plan. Reese, a real estate broker, was to testify as a qualified valuation expert about the negative effect of the taking on the fair market value of the Property. Reese, Lakin and Nasuti prepared reports, which Condemnee furnished to Condemnor.

---

1. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, formerly 26 P.S. §§ 1–101–1–903, repealed by section 5(2) of the Act of May 4, 2006, P.L. 112. Although repealed, the Code governs this case because, with certain exceptions not applicable here, the new statute applies only to condemnations effected on or after its September 1, 2006, effective date. *See In Re: Condemnation by County of Berks*, 914 A.2d 962 (Pa.Cmwlth.2007).

Condemnor filed a motion in limine to exclude the testimony of Reese, Lakin and Nasuti concerning the opinions set forth in their reports. Condemnor argued that: (1) the witnesses were not qualified valuation experts because they did not possess real estate appraiser licenses; and (2) any testimony by them that the Property's highest and best use was as an expanded airport would be speculative. The trial court accepted these arguments and granted the motion, excluding any testimony about the expansion of the airport. Condemnee filed a petition to amend the interlocutory order to state that it involves a controlling question of law to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter. The trial court granted the petition, and Condemnee filed a petition for permission to appeal with this court, which was granted.[2]

## I. Appraiser Certification

Condemnee first argues that the trial court erred in concluding that a qualified valuation expert testifying in a condemnation proceeding must possess a real estate appraiser license. We agree.

Section 3 of the Real Estate Appraisers Certification Act (Appraisers Act), Act of July 10, 1990, P.L. 404, *as amended,* 63 P.S. § 457.3 (emphasis added), provides, in pertinent part, as follows:

It shall be unlawful two years after the effective date of this act [3] for any per-

son to perform real estate appraisals **in nonfederally related transactions** unless that person holds a valid certificate from the [State Board of Certified Real Estate Appraisers (Board)] to perform real estate appraisals.

The Appraisers Act does not define the phrase "nonfederally related transactions." However, the Board's regulations define the phrase "[f]ederally-related transaction" as a **"real estate-related financial transaction"** that requires an appraiser and is engaged in, contracted for or regulated by certain **federal** agencies. 49 Pa.Code § 36.1. Because the word "transaction" refers to a "real estate-related financial transaction," the phrase "nonfederally related transaction" means a **"real estate-related financial transaction"** that requires an appraiser and is engaged in, contracted for or regulated by **non-federal** entities.

■ The Board's regulations define the phrase "real estate-related financial transaction" as follows:

A transaction involving the following: (i) Sale, lease, purchase, investment in or exchange of real property, including interests in property or the financing thereof. (ii) Refinancing of real property or interests in real property. (iii) Use of real property or interests in property as security for a loan or investment, including mortgage-backed securities.

49 Pa.Code § 36.1. Significantly, this definition does **not** include a condemnation of property.[4] Thus, the phrase "nonfederally

**2.** The admission of expert opinion evidence is a matter for the discretion of the trial court, to be disturbed only when that discretion is clearly abused. *Department of Transportation v. WWSW Radio, Inc.,* 34 Pa.Cmwlth. 287, 383 A.2d 552 (1978).

**3.** The statute adding this sentence to section 3 of the Act became effective sixty days after its enactment on July 2, 1996.

**4.** Under section 201 of the Code, 26 P.S. § 1–201, the word "[c]ondemn means to take, injure or destroy private property by authority of law for a public purpose." Thus, a condemnation of property does **not** fall within the definition of "real estate-related financial transaction."

related transaction" in section 3 of the Appraisers Act is not so broad as to encompass a condemnation of property. As a result, it is **not** unlawful for a person who lacks a real estate appraiser license to perform a real estate appraisal in connection with a condemnation proceeding.

■   Indeed, it makes no sense to **require** that qualified valuation experts in condemnation proceedings possess real estate appraiser licenses. Under section 703(2) of the Code,[5] valuation experts may opine regarding the highest and best use of property. This case involves airport expansion as the highest and best use, and Lakin and Nasuti are airport experts. Although they are not licensed real estate appraisers, Lakin and Nasuti certainly would know more about airport expansion than a licensed appraiser. Moreover, we note that, under section 704 of the Code,[6] a condemnee is a qualified valuation expert automatically without any further qualification. *Hoffman v. Commonwealth,* 422 Pa. 144, 221 A.2d 315 (1966).

■   Finally, in *McGaffic v. Redevelopment Authority of New Castle,* 732 A.2d 663 (Pa.Cmwlth.), *appeal denied,* 560 Pa. 733, 745 A.2d 1226 (1999), this court held that a real estate broker who lacked certification under the Appraisers Act can testify in a condemnation proceeding.[7] This court also held that a trial court may properly believe a real estate broker's valuation testimony over the testimony of a certified real estate appraiser. *Id.* Here, Reese is a real estate broker lacking certification under the Appraisers Act, like the *McGaffic* witness who testified and was found

more credible than a certified appraiser. Thus, having determined that the Appraisers Act does not apply to persons who perform appraisals in condemnation proceedings, we conclude that the trial court abused its discretion in excluding Reese's testimony about the effect of the taking on the fair market value of the Property.

## II.  Highest and Best Use

■   Condemnee next argues that the trial court abused its discretion in excluding testimony by Lakin, Nasuti and himself about the highest and best use of the Property. We agree.

In a condemnation proceeding, just compensation is the difference between the fair market value of the condemnee's property immediately before and after the condemnation. Section 602(a) of the Code, 26 P.S. § 1–602(a). Fair market value is the price that a willing and informed seller and buyer would agree to, taking into consideration the highest and best reasonably available use of the property and its value for such use. Section 603 of the Code, 26 P.S. § 1–603.

■   In *Pennsylvania Gas and Water Company v. Pennsylvania Turnpike Commission,* 428 Pa. 74, 236 A.2d 112 (1967), our supreme court set forth two requirements for proving the highest and best use of property. The condemnee must show that, at the time of condemnation: (1) the land was physically adaptable to a particular use; and (2) there was a need, or market, for the use in the area. *Id.; Department of Transportation v. WWSW Ra-*

---

5.   26 P.S. § 1–703(2).

6.   26 P.S. § 1–704.

7.   This court noted that the real estate broker's appraisal was performed before the effective date of the Appraisers Act; thus, this court did not address whether the Appraisers Act

precluded the witness from testifying. *McGaffic.* Then, this court stated, "While such certification would surely have added to [the witness's] qualifications, the lack of certification did not operate to disqualify him." *McGaffic,* 732 A.2d at 673.

*dio, Inc.,* 34 Pa.Cmwlth. 287, 383 A.2d 552 (1978).

▆▆▆ Where an owner's actual plans for property affect the property's highest and best use, the plans are relevant and generally are admitted into evidence. 5 Nichols on Eminent Domain § 18.05[3] (1997). The intention of an owner in purchasing a property and the completion of preliminary steps in the development of the property can remove the matter of highest and best use from the realm of conjecture and speculation into reality. 4 Nichols on Eminent Domain § 12B.14[3].

### A. Condemnee

Here, Condemnor attached to its motion in limine a copy of Condemnee's testimony before the board of viewers. According to the transcript, Condemnee would have testified before the trial court that: (1) when he acquired the Property in 1992, he planned to expand and upgrade to a "business services airport" because of the Property's location and the growth of the surrounding area; (2) he had just begun the upgrade under a twelve-year plan when, in 1996, Condemnor proposed to install an electric transmission line, above ground, directly in front of the runway at the south end of the Property; (3) he challenged Condemnor's proposal before the PUC from 1996 to 1999 but did not prevail; and (4) although the Bureau of Aviation forced Condemnor to install a portion of the transmission line below ground, the transmission line, as it is, prevents Condemnee from lengthening the runway so that he can upgrade to a "business services airport." (Condemnor's motion, ex. D, N.T. at 110–14.)

Such testimony shows that Condemnee's plans for an expanded airport were not mere conjecture and speculation. Condemnee had actual plans and was beginning to implement them at the time Condemnor proposed the installation of its transmission line. Condemnee's testimony about the plan would have addressed the physical adaptability of the Property and the need for an expanded airport in the area. Thus, Condemnee's testimony would have been relevant and admissible evidence with respect to the highest and best use of the Property. The trial court abused its discretion in concluding otherwise.

### B. Lakin

Lakin based his economic analysis report on "the physical characteristics of [Condemnee's] facility along with the geographic location and the state of the aviation industry in southwestern Pennsylvania." (R.R. at 5a.) Lakin stated:

One of this airport's primary assets is the airport location.... With its rural setting in close proximity [to] the population areas ... the airport is **well situated in an area highly conducive to development and growth of aviation operations.** The airport has easy access to major highway corridors, including routes 22, 66, 30, 119 and I–70. The Pennsylvania Turnpike (I–76) and the Turnpike Commission's Amos K. Hutchinson Bypass offer easy access to much of Westmoreland and Fayette counties, while I–376 provides direct connection to Allegheny County's eastern suburbs, such as Monroeville, and the City of Pittsburgh. Meanwhile, most of the surrounding townships, including Hempfield, Penn, North Huntingdon and Salem, are also experiencing significant growth.

According to Westmoreland County's Comprehensive Plan, the county's job growth has occurred in economic sectors that pay above-average wages.... The county's median household income increased 9.6%, which is nearly double the

state's 4.9% median household income increase during the same time period. **This rise in disposable income translates to a climate ripe for aviation development.**

(R.R. at 6a) (emphasis added).

Clearly, Lakin's testimony would have addressed one of the required elements for showing the highest and best use of property at the time of condemnation, i.e., the need, or market, for the use in the area. Thus, Lakin's testimony would have been relevant and admissible evidence to show that the highest and best use of the Property was as an expanded airport. The trial court abused its discretion in concluding otherwise.

### C. Nasuti

In his report, Nasuti states that: (1) he assisted Condemnee in developing the twelve-year plan; (2) the ultimate potential of the Property was to develop it into a "business services airport"; (3) the location of the Property in relation to the growing corridors along U.S. Route 22 and U.S. Route 66 would have made the development of a "business services airport" attractive to area businesses; and (4) prior to the taking, sufficient land was available to extend the airport's runway and construct the parallel taxiway and safety areas necessary for a "business services airport." (R.R. at 9a.) Such statements directly address the physical adaptability of the Property and the need, or market, for an expanded airport in the area. Thus, Nasuti's testimony would have been relevant and admissible evidence that the highest and best use of the Property at the time of condemnation was as an expanded airport. The trial court

abused its discretion in concluding otherwise.

### D. Speculation

■ Although the trial court does not explain why it concluded that testimony about an expanded airport would be speculative, Condemnor alleged in its motion that Condemnee could not expand his airport without violating a water line easement and without obtaining a variance to expand his non-conforming use.[8] In support of these assertions, Condemnor attached to its motion certain testimony given before the board of viewers.

Michael Kenney, the Assistant Manager of the Municipal Authority of Westmoreland County, testified that: (1) the Authority has a water line easement over the Property; (2) the integrity of the water line would be affected if Condemnee were to place one million cubic yards of soil over the water line; and (3) the Authority would want to relocate the water line if Condemnee were to place one million cubic yards of soil over it. (R.R. at 43a, 45a, 47a.) However, Kenney's testimony, by itself, does not establish that Condemnee's airport expansion would require that one million cubic yards of soil be placed over the water line.

Bruce Light, Manager of Penn Township, testified that Condemnee's airport is a non-conforming use, and, under the local zoning ordinance, the expansion of a non-conforming use cannot exceed 80% of the fair market value of the property at the time it became non-conforming. (R.R. at 48a, 50a–52a.) However, Light's testimony, by itself, does not establish that Condemnee's expansion would exceed 80% of the fair market value of the Property at the time it became non-conforming.

---

**8.** In its brief, Condemnor alleges other grounds for asserting that any testimony about an expanded airport would be specula-tive. However, these grounds were not set forth, or supported, in Condemnor's motion in limine.

Because Condemnor did not establish that Condemnee's expansion would violate the water line easement and require a zoning variance, these matters do not render speculative any testimony about an expanded airport as the highest and best use of the Property.

Accordingly, we reverse and remand for further proceedings.

### ORDER

AND NOW, this 9th day of April, 2008, the order of the Court of Common Pleas of Westmoreland County (trial court), dated August 30, 2007, is hereby reversed, and this case is remanded to the trial court for further proceedings.

Jurisdiction relinquished.