Stoner *v.* Metropolitan Edison Company,
Appellant.

334

Argued May 26, 1969. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John S. McConaghy,* with him *Samuel B. Russell, Samuel S. Laucks, Jr.,* and *Ryan, Russell & McConaghy,* and *Laucks & Monroe,* for appellant.

*Mark E. Garber,* with him *George M. Houck,* and *Garber, Garber & Fowler,* for appellees.

OPINION BY MR. JUSTICE POMEROY, July 2, 1970:

In 1966, the Metropolitan Edison Company, a public utility, condemned a right-of-way for the installation of a 500 k.v. electric transmission line across a dairy farm owned by the appellees, David M. Stoner and Irene E. Stoner, his wife, and located in Carroll Township, York County. A Board of Viewers appointed on the Stoners' petition awarded damages in the amount of $8,000. The Stoners' appeal to the Common Pleas Court of York County resulted in a jury verdict of $26,000. The condemnor's new trial motion was denied, and following entry of judgment in favor of the Stoners, the condemnor brought this appeal.

## I.

The Eminent Domain Code (hereinafter the "Code"), Act of June 22, 1964, Spec. Sess., P. L. 84, §§601, 602, 26 P.S. §§1-601, 1-602, entitles a condemnee to "just compensation for the taking, injury or destruction" of his condemned property and defines "just compensation" as "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby." See *Dague v. Commonwealth,* 418 Pa. 340, 211 A. 2d 527 (1965). Section 603 of the Code, 26 P.S. §1-603, defines "fair market value" as the price which willing and informed parties would

agree upon, taking into consideration not only the "present use of the property and its value for such use" but also the "highest and best reasonably available use of the property and its value for such use." See *Mazur v. Commonwealth*, 390 Pa. 148, 134 A. 2d 669 (1957) and *Gilleland v. New York State Natural Gas Corporation*, 399 Pa. 181, 159 A. 2d 673 (1960). It is appellant's principal contention that the verdict in this case was excessive and against the weight of the evidence, when considered in light of this statutory measure of damages.

Initially, the condemnor points to the wide disparity between the Board of Viewers' award and the jury's verdict as an indication that the verdict was excessive. This Court has frequently held that the award of the viewers is an important circumstance to be considered when it is contended that a jury verdict is excessive, but the viewers' award is not the controlling factor. *Boring v. Metropolitan Edison Company*, 435 Pa. 513, 257 A. 2d 565 (1969); *Chiorazzi v. Commonwealth*, 411 Pa. 397, 192 A. 2d 400 (1963); and *Baker v. Commonwealth*, 401 Pa. 512, 165 A. 2d 243 (1960). Accordingly, we have frequently upheld jury verdicts considerably in excess of the viewers' award. See *Snyder v. Commonwealth*, 412 Pa. 15, 192 A. 2d 650 (1963); *Brown & Vaughn Development Co. v. Commonwealth*, 393 Pa. 589, 143 A. 2d 815 (1958); and *Fisher v. Allegheny County*, 324 Pa. 471, 188 Atl. 196 (1936).

Our holdings in this regard are grounded upon the nature of the jury trial in a condemnation action. The jury trial provided by Section 515 of the Code (26 P.S. §1-515) is a *de novo* proceeding. *Manganese Steel Forge Co. v. Commonwealth*, 421 Pa. 67, 218 A. 2d 307 (1966). Under §703(3) of the Code the report of the viewers and the amount of their award are not admissible in evidence at trial. (26 P.S. §1-703(3)) Accordingly, the parties may present a case at trial which de-

viates considerably from that put before the Board of Viewers. Undue attention on appeal to the magnitude of the viewers' award would effectively deprive the dissatisfied condemnee of his statutory right to a jury determination of damages. See, also, *Shotts v. Pennsylvania Turnpike Commission*, 431 Pa. 83, 85, 243 A. 2d 326 (1968). Rather than resting upon a comparison between the viewers' award and the jury verdict, our decision as to whether a new trial is called for requires a review of the testimony presented at trial to determine whether the jury verdict was excessive.

At the trial of this case, the condemnees' witnesses (two local real estate agents and Mr. Stoner testifying in his own behalf) advanced the thesis that the highest and best use of the Stoner property was for development—residential, industrial and/or commercial according to the section of the property in question—while the real estate appraisers who testified in behalf of the condemnor based their testimony on the continued use of the property as a dairy farm. This disagreement as to highest and best use resulted in a considerable difference both as to the before-condemnation value and the damages attributable to condemnation. The appellees' experts testified to a before-condemnation value in the neighborhood of $150,000 and to damages of approximately $30,000; appellant's experts calculated a prior value of approximately $90,000 and damages of roughly $6,000.

It has long been recognized that the market value of a piece of property may reflect one of a number of possible uses to which the land has not been put at the time of condemnation. "If these uses . . . would occur to the average buyer and influence him, they must enter directly into the market value of the land regardless of the uses to which the owner has theretofore applied the land." *Savings & Trust Company of Indiana v. Pennsylvania R.R. Co.*, 229 Pa. 484, 488, 78 Atl. 1039

(1911). But while a property owner may expect compensation for reasonable certainties inherent in the present, he may not recover for remote chances or future possibilities and may not submit evidence to a jury based on a speculative contingency. *Gilleland v. N. Y. State Natural Gas Corp., supra*. This Court has held that to prove a highest and best use the condemnee must establish that the land in question is physically adaptable to such use and that there is a need for such use in the area which is reflected in the market for the property existing at the time of the condemnation. *Shillito v. Metropolitan Edison Co.*, 434 Pa. 172, 252 A. 2d 650 (1969); *Pa. Gas & Water Co. v. Pa. Turnpike Comm.*, 428 Pa. 74, 236 A. 2d 112 (1967); and *A. D. Graham & Company, Inc. v. Pa. Turnpike Comm.*, 347 Pa. 622, 33 A. 2d 22 (1943).

In the present case, appellant vigorously contends that development of the Stoners' property was remote and wholly speculative in view of the conditions prevailing at the time of condemnation;[1] it concludes that valuation testimony as to such use was therefore inadmissible. We cannot agree. One witness for the Stoners, Paul Sopensky, specifically stated that the Stoners' property located along Route 15 was ready for sale for residential development. Appellees' witnesses also stated that development like that which they projected for the Stoner property had reached similar areas in the adjacent sections of Cumberland County and that such development would soon come to the area of the Stoner property. As to commercial and industrial development, this testimony was strengthened by the fact that the Stoners' property was served by an ample highway network. The farm had extensive frontage on

---

[1] There is no contention that the Stoners' farm was not physically suitable for the development projected by the Stoners' expert witnesses.

and unrestricted access to the highway known as old U.S. Route 15, which immediately north of the Stoner property leads to new Route 15, a limited access, four-lane highway. Moreover, Harrisburg West Interchange of the Pennsylvania Turnpike was within five miles of the Stoner property, and a line of the Reading Railroad bisected the farm.

Thus there was testimony as to an immediate market for part of the use proposed by the condemnee; there was further testimony of nearby development and the existence of objective conditions on the Stoner property which supported this kind of development. Under the facts of this case the Stoners had the right to present evidence of possible uses for their property other than dairy farming. The evidence presented was sufficient to persuade a jury that a buyer, at the time of condemnation, would have been influenced by this possibility of future development, and the size of the verdict returned reflects the jurors' acceptance of the possible uses and the measure of damages advanced by the condemnees' experts.

We will not interfere with a court's denial of a motion for new trial in a condemnation case unless "the verdict was so excessive or inadequate that the refusal of the court below to grant a new trial was a clear and manifest abuse of discretion or was unconscionable or shocking to the court's sense of justice." *Boring v. Metropolitan Edison Company, supra.* While we may not agree with the exact determination made by the jury in this instance, we find no "clear and manifest abuse of discretion" in the lower court's refusal of appellant's new trial motion.

## II.

In the proceeding before the Board of Viewers, one A. N. Reihart, a real estate expert, appeared as a wit-

ness for appellees, but at trial the Stoners did not call Reihart as a witness. The trial court refused to permit the condemnor to elicit testimony about, or to comment to the jury upon, the failure to call Reihart. Appellant contends that this refusal was error and that the court further erred in not charging the jury that they might infer from the condemnees' failure to call this prior witness that his testimony would have been unfavorable. We find no merit in this contention.

As noted above, the jury trial in a condemnation case is a *de novo* proceeding. *Manganese Steel Forge Company v. Commonwealth, supra,* and *Snyder v. Commonwealth, supra.* The trial is conducted without reference to the prior proceedings before the viewers, just as a new trial following the grant of a motion for the same is conducted as an entire new proceeding, without reference to the prior trial. See *Pennsylvania Co. for Insurance on Lives v. Lynch,* 308 Pa. 23, 162 Atl. 157 (1932); *Williams v. Notopolos,* 262 Pa. 472, 105 Atl. 819 (1919); and *Pupich v. Bock,* 202 Pa. Superior Ct. 382, 195 A. 2d 809 (1963). Therefore, the condemnee was not obliged to duplicate, at trial, his entire case before the viewers and remained free, at trial, to replace a witness who testified before the viewers with any other or to eliminate prior witnesses altogether.[2] *Snyder v. Commonwealth, supra.* "The mere

---

[2] Section 703(2) of the Code requires the party calling a valuation expert "who has not previously testified before the viewers," to disclose his name to the opposing party prior to trial along with a statement of his valuation of the condemned property. The purpose of this requirement is "to eliminate the surprise element . . . when one expert is used before the viewers and another, with a different valuation and opinion . . . is called at the trial." Commentary of the Joint State Government Commission to the Code, *supra,* §703(2), 26 P.S. §1-703(2). There is no corresponding obligation in the Code for notice that a witness who appeared before the viewers will not appear at trial.

fact that a witness was called by a party on a former trial imposes no obligation on the party to either call him or explain his absence on a subsequent trial." *Levine v. Metropolitan Street Railway Co.,* 78 App. Div. 426, 431, 80 N.Y.S. 48, 51 (1903).

We conclude that the lower court was justified when it refused the condemnor's requested charge to the jury and thus disappointed its desire to comment to the jury about the appellees' failure to produce Reihart as a witness.

Judgment affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.