530 A.2d 1041

Redevelopment Authority of The City of Philadelphia, Appellant *v.* Luis E. Nunez, Appellee.

Argued June 9, 1987, before President Judge CRUM-LISH, JR., Judge COLINS, and Senior Judge NARICK, sitting as a panel of three.

*William T. Steerman,* for appellant.

*Herbert Bass,* with him, *Mark. L. Morris, Janet R. Seligman, Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY SENIOR JUDGE NARICK, September 10, 1987:

Appellant, the Redevelopment Authority of the City of Philadelphia, filed a declaration of taking on April 26, 1973 against property owned by Appellee, Luis E. Nunez, located at 1614 Summer Street. On August 7, 1975, Appellant filed a writ of possession and paid $65,000 to Appellee, which represented its estimate of just compensation. Appellee contested this estimate, and the matter was heard before a Board of View, which awarded Appellee $140,500. Appellee appealed, and the case was heard *de novo* before a jury in the Court of Common Pleas of Philadelphia County. The jury returned a verdict for appellee in the amount of $295,000, later molded by the trial court to reflect statutory interest charges, and the $65,000 credit. Appellant filed a motion for a new trial and/or request for remittitur, which were denied by the trial court. Appellant appeals from that order.

The property at issue was a lot, located at 1614 Summer Street, measuring approximately 28' x 111' which contained a 2-story commercial building. Dr. Nunez (Appellee) testified that he bought the building in 1971 and that he planned to add several floors to the existing structure to erect a health maintenance organization (HMO) center which would contain several doctors' offices with attached living quarters. Appellee in-

troduced the testimony of two expert real estate appraisers, who valued his property, respectively, at $375,000 and $300,000 as of the date of the taking. Both of these appraisals were based upon the property's highest and best use as an HMO center. Appellant's expert, considering the highest and best use of the property to be a vacant commercial building, which it was on the date of taking, estimated its value at $67,500.

Our scope of review from an order denying a motion for a new trial is limited to a determination of whether the trial court has manifestly abused its discretion, or committed an error of law. *Borough of Tamaqua v. Knepper*, 54 Pa. Commonwealth Ct. 630, 422 A.2d 1199 (1980).

The first of Appellant's arguments is that the trial judge erred in explaining Appellee's burden of proof in his charge to the jury. Appellant urges us to adopt a new rule of law to the effect that there will, henceforth, be no burden of proof in eminent domain cases. However, as Appellee points out, Appellant did not preserve this issue for appellate review in that it failed to take exception to the specific portion of the charge concerning the allocation of the burden of proof, although it noted a general exception to the entire charge. As Appellee's position is in accord with long-standing precedent, we must decline to consider this argument. *See e.g. Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Zeman v. Canonsburg Borough*, 423 Pa. 450, 223 A.2d 728 (1966); *Pennsylvania Power & Light Co. v. Gilotti*, 39 Pa. Commonwealth Ct. 234, 395 A.2d 624 (1978).

Appellant's second contention is that the testimony of Appellee and his witnesses regarding the highest and best use of the property was so speculative that it should have been stricken upon counsel's objection or *sua sponte* by the trial court judge.

First of all, it is counsel's responsibility to make timely, specific objections at trial in order to preserve an issue for review. *Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 194, 489 A.2d 1286 (1985); *Nobel v. West Penn Power Co.*, 36 Pa. Commonwealth Ct. 577, 388 A.2d 781 (1978). It is clear from a review of the record that Appellant's counsel failed to do so. While he did object to certain portions of both the experts' and Appellee's testimony, none of the objections went to the speculative nature of the statements concerning the highest and best use of the property. Accordingly, this issue has not been preserved, and we will not consider it. *Reilly; Noble.*

Secondly, Appellant cites no authority for the proposition that the trial judge should have stricken the contested testimony on his own initiative. Indeed, the testimony was admissible as it is well settled that the value of a condemned property need not be measured in terms of its existing use. *County of Luzerne v. Ceccoli*, 75 Pa. Commonwealth Ct. 486, 462 A.2d 354 (1983). " '[T]o prove a highest and best use the condemnee must establish that the land in question is physically adaptable to such use and that there is a need for such use [of] . . . the property at the time of the condemnation.' " *Ceccoli*, 75 Pa. Commonwealth Ct. at 487-488, 462 A.2d at 355, *quoting Stoner v. Metropolitan Edison Co.*, 439 Pa. 333, 338, 266 A.2d 718, 721 (1970). Recovery on this theory, however, may not be based upon remote chances or future possibilities. *Id.* The trial judge permitted Appellee's expert witnesses to testify regarding the feasibility of building the proposed structure upon the existing site. Appellee himself testified concerning the need in the community for the type of facility he planned to build. He also stated that he had sought and received zoning and building approval, had had architectural plans of the proposed building drawn, and had

begun to solicit construction bids. It is apparent that this testimony was admissible to establish that the property's highest and best use was that of an HMO center. Appellant dramatically insists that all of this testimony was speculative because the concept of an HMO did not exist in 1971, when Appellee acquired the property. There is no support for this assertion in the record, and, in fact, Appellee stated that the concept had begun to develop in 1971, and that he bought the property in order to establish such a center. Thus, we are unable to discern any error on the part of the trial court in allowing the testimony.

Appellant's final contention is that the verdict was so excessive and unconscionable as to shock the conscience of the court, entitling it to a new trial. We find this contention to be without merit for several reasons.

Appellant claims that there is a lack of sufficient, credible evidence upon which the jury's verdict could be based. We note initially that it is the province of the jury to weigh the credibility of conflicting evidence and determine the value of the property at the time of the taking. *Knepper*. Here, the jury listened to the testimony of three witnesses who were qualified as experts. Appellant's expert estimated the value of the property at $67,500. Appellee's experts disagreed, valuing it at $375,000 and $300,000 respectively. The jury returned a verdict of $295,000, which is certainly within the range of testimony. *See Pennsylvania Power & Light Co.*

Secondly, the jury in this case viewed the property in question. Where a jury views a site, we have held that it may base its verdict on its own judgment, and disregard the expert testimony entirely. *Knepper*.

Finally, while Appellant concedes that the Board of View award, $140,500, is only one factor to be considered, a trial judge may use it as evidence in deciding whether or not to grant a new trial on the grounds of an

excessive or inadequate verdict. *See e.g., Stoner.* Appellant argues that a difference of over 100% should have shocked the court's conscience. However, the cases make it clear that, while the trial court has broad discretion in granting a new trial where it is clear that the verdict is not reflective of the damages suffered, this discretion does not extend to usurping the jury's power as factfinder. *Tinicum Real Estate Holding Corp. v. Commonwealth,* 480 Pa. 220, 389 A.2d 1034 (1978). In *Tinicum,* our Supreme Court reinstated a jury verdict which was $759,700 below the amount awarded by a board of viewers. Here, the trial court concluded, and we agree, that the discrepancy between the verdict and the Board of View award was not controlling because the verdict was within the parameters of the experts' testimony, and there was no other evidence to indicate that it was excessive.

For the foregoing reasons, we affirm the order of the Court of Common Pleas.

### ORDER

AND NOW, this 10th day of September, 1987, the order of the Court of Common Pleas of Philadelphia County with respect to the above-captioned matter, dated March 14, 1986, is affirmed.