**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1613
_____

ROVER PIPELINE LLC,
                    Appellant

v.

ROVER TRACT NO. PA WA HL-004.500T, COMPRISED OF PERMANENT EASEMENT(S) TOTALING 0.9 ACRES, MORE OR LESS, AND TEMPORARY EASEMENT(S) TOTALING 1.33 ACRES, MORE OR LESS, OVER A PARCEL OF LAND IN HANOVER TOWNSHIP, WASHINGTON COUNTY, PENNSYLVANIA, TOTALING 49.571 ACRES, MORE OR LESS; JUSTIN D. SMITH and WENDY J. SMITH; RANGE RESOURCES APPALACHIA LLC; WEST PENN POWER CO, doing business as Allegheny Power; VERIZON PENNSYLVANIA LLC; COLUMBIA GAS TRANSMISSION LLC, c/o Corporation Service Company; HARMON CREEK COAL CO; MULLETT COAL CO INC; BARBARA MINGES SHEPERD; EMERY J. MINGES; PATRICIA R. SHOOP MINGES; DOUGLAS EMERGY MINGES; TALISMAN ENERGY USA INC; MURDOCKSVILLE INDEPENDENT TELEPHONE CO; JAMES M. BUCHANAN AND DIANE ZACK BUCHANAN FARM #4 LP and ROVER TRACT NO. PA WA HL-008.000T, COMPRISED OF PERMANENT EASEMENT(S) TOTALING 1.23 ACRES, MORE OR LESS, AND TEMPORARY EASEMENT(S) TOTALING 1.97 ACRES, MORE OR LESS, OVER A PARCEL OF LAND IN HANOVER TOWNSHIP, WASHINGTON COUNTY, PENNSYLVANIA TOTALING 73.874 ACRES, MORE OR LESS; DAVID J. RHEINLANDER and GRETCHEN RHEINLANDER, husband and wife; PNC MORTGAGE, a division of PNC Bank, Nation Association; OLD WILSON FARM LAND TRUST, Lawrence E. Bolind, Jr., Trustee; CAPITAL C ENERGY OPERATIONS LP; LUCILLE D. FROATS; FIRSTENERGY CORP; LAVERNE D. MEDINA; MCDONALD ROD & GUN CLUB, a Non-Profit Pennsylvania corporation; ROCCO ZAGARI, JR. and JILL ZAGARI, as tenants in common; VALVOLINE OIL CO; PEOPLES NATURAL GAS COMPANY LLC, c/o Corporation Service Company; WCM PROPERTIES LLC; LAREINA ORISON GEORGE; ELYSIA ORISON SMITH; FRED C. STROUD; PEOPLES NATURAL GAS COMPANY LLC

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:17-cv-00170)
District Judge: Honorable Arthur J. Schwab
_____

Argued: February 6, 2020

Before: CHAGARES, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: May 7, 2020)
_____

Thomas A. Zabel          [ARGUED]
Nancy H. Elliot
Vadim O. Bourenin
Zabel Freeman
1135 Heights Blvd.
Houston, TX 77008

Brian J. Pulito
Jon C. Beckman
Steptoe & Johnson
201 Chestnut St., Suite 200
Meadville, PA 16335

    *Counsel for Appellant Rover Pipeline LLC*


Harry F. Kunselman          [ARGUED]
Amanda M. Cook
Strassburger McKenna Gutnick & Gefsky
444 Liberty Ave., Suite 2200
Pittsburgh, PA 15222

    *Counsel for Appellees Rover Tract No. PA WA HL-004.500T, Rover Tract No. PA WA HL-008.000T, and James M. Buchanan and Diane Zack Buchanan Farm #4 LP*

_____

OPINION[*]
_____

BIBAS, *Circuit Judge*.

Sometimes, a court-appointed commission strays too far, exceeding even its broad fact-finding powers. Rover Pipeline LLC used eminent domain to take several easements for the natural-gas pipeline that it plans to bury across the middle of James and Diane Buchanan's farm. As neither side could agree on a fair price for the needed easements, the District Court appointed a Commission to settle the score. The Commission calculated just compensation as the difference between the farm's pre- and post-taking fair market values. Its post-taking valuation was proper. But its pre-taking estimate erroneously assumed that the farm could be developed in ways barred by local zoning rules. The District Court affirmed that error. So we will reverse in part and remand for a fresh pre-taking valuation.

## I. BACKGROUND

### A. Rover takes a two-acre slice of the Buchanans' farm

A few years ago, the Federal Energy Regulatory Commission approved Rover's plan to build a natural-gas pipeline across Ohio, Michigan, West Virginia, and Pennsylvania. To build across private land, Rover would need a lot of easements. Most of them it bought by negotiating with landowners. But not all landowners would agree. When negotiations

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

3

failed, Rover had eminent-domain power under the Natural Gas Act to bring condemnation actions to get the easements. 15 U.S.C. § 717f(h).

Rover's negotiations with the Buchanans broke down. The Buchanans own a 123.445-acre farm in Hanover Township, Pennsylvania. Rover approached them to negotiate a price for running its pipeline across their farm. But they resisted. So Rover brought this condemnation action to secure two things: a permanent easement for the pipeline and temporary easements for a few construction amenities (a temporary workspace, surface site, road access, and other rights of way). The permanent easement would cut a fifty-foot-wide slice right through the middle of the Buchanans' farm, covering about two acres of their land.

Although Rover and the Buchanans were able to agree on a price for Rover's initial right of entry, there was still a bone of contention: what price was fair for the permanent and temporary easements. To end their gridlock, Rover moved to create a court-appointed commission to decide what compensation was just. *See* Fed. R. Civ. P. 71.1(a), (h)(2)(A). The District Court granted the motion and chose the Commission's three members: two real-estate lawyers and a former Pennsylvania Court of Common Pleas judge.

**B. The Commission's valuation**

Private parties, like governments, must pay just compensation for takings under the Natural Gas Act. *Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 242–43 (3d Cir. 2019). The Commission had to calculate how much Rover would have to pay the Buchanans for burdening about two acres of their roughly 123-acre farm. State substantive law (here, Pennsylvania law) governs this calculation. *Id.* at 255.

4

In the Keystone State, just compensation for a partial taking equals the difference between the fair market value of the property right before and after the taking. 26 Pa. Cons. Stat. §702(a); *see Stoner v. Metro. Edison Co.*, 266 A.2d 718, 720 (Pa. 1970). Fair market value is based in part on a property's "highest and best reasonably available use." 26 Pa. Const. Stat. § 703(2); *see Stoner*, 266 A.2d at 720. So the Commission had to identify the farm's highest and best uses both before and after the taking, assign dollar values to each use, subtract the post-taking value from the pre-taking value, and bill Rover for the difference.

1. *Pre-taking*. To help identify the farm's pre-taking value, the Commission visited the Buchanans' farm and then held an evidentiary hearing. At the hearing, it heard testimony from Mr. and Mrs. Buchanan and each side's experts. It also considered expert valuation reports, maps, and evidence about the surrounding area to assess the potential for future development. After the hearing, the Commission found that the farm's best pre-taking use was "rural recreational and residential uses, which includes … *multi-family* residential and recreational use." App. 97 (emphasis added). It unanimously valued that best use at $6,400 per acre, for a total pre-taking value of $790,048.

2. *Post-taking*. The Commission next found that the farm's best post-taking use was the farm's "long-standing existing rural recreational and residential uses," rather than "multi-family residential" development. App. 97, 100. It based this finding on two facts: First, Rover could block residential development. The permanent easement would give Rover sole discretion to grant or deny construction requests, and Rover was unlikely to

grant those requests. Second, because Rover's easements cut the farm right down the middle, they would substantially impede the Buchanans' efforts to link utilities from the upper to the lower part of the farm. So it pegged the farm's post-taking value at $3,400 per acre, for a total post-taking value of $419,713.

3. *Just compensation*. The Commission took the farm's pre-taking value ($790,048) and subtracted its post-taking value ($419,713), for a difference of $370,335. After adding $4,224 for Rover's temporary workspace easement and subtracting the $65,628 that Rover had already paid the Buchanans for its initial right of entry, the Commission set Rover's final bill at $308,931.

## C. The District Court affirms the Commission's valuation

Both Rover and the Buchanans objected to the Commission's findings before the District Court. The District Court reviewed the Commission's findings de novo and adopted them in full. App. 35; *see* Fed. R. Civ. P. 53(f)(3)–(4). Rover now appeals to us, arguing that the Commission and District Court overestimated the farm's pre-taking value and underestimated its post-taking value. The District Court had jurisdiction over this condemnation proceeding under 28 U.S.C. § 1331 and 15 U.S.C. § 717f(h). We have jurisdiction under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

The parties contest the standard of review. If state law governed our standard of review, that dispute would make sense. The Pennsylvania Supreme Court has not decided whether

6

findings about a property's highest and best use are pure questions of fact or mixed questions of law and fact. *See In re De Facto Condemnation & Taking of Lands of WBF Assocs., L.P. ex rel. Lehigh-Northampton Airport Auth.*, 903 A.2d 1192, 1210 n.14 (Pa. 2006).

But this is a federal action in a federal court. So federal procedural law dictates whether the Commission's assessment of the farm's best use is a question of law or fact. *See Cooper Labs., Inc. v. Int'l Surplus Lines Ins. Co.*, 802 F.2d 667, 671 (3d Cir. 1986); *see also Coplay Cement Co., Inc. v. Willis & Paul Grp.*, 983 F.2d 1435, 1438 (7th Cir. 1993) (collecting cases). And under federal law, the assessments a Commission makes in its valuation report are "findings of fact" subject to review for clear error. *United States v. Merz*, 376 U.S. 192, 198 (1964). On to the merits.

### III. THE COMMISSION'S PRE-TAKING VALUATION IS CLEARLY ERRONEOUS

Rover argues that the Commission (and thus the District Court) erred by identifying the wrong best use, and thus overestimating the farm's pre-taking value. We agree.

The Commission found that the farm's best pre-taking use was "rural recreational and residential uses, which includes a less dense *multi-family* residential and recreational use." App. 97 (emphasis added). We cannot find any evidence in the record to support a "multi-family residential" use. By choosing a use that "bears no rational relationship to the supportive evidentiary data," the Commission clearly erred. *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 283 (3d Cir. 2014) (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004)).

The Buchanans' farm was not zoned for multi-family-residential use. "Multifamily" is a term of art in the local zoning ordinance. It defines "Multifamily Dwelling" as "[a] residential building designed exclusively for occupancy by three (3) or more families living independently of each other and containing three (3) or more dwelling units." Township of Hanover, Zoning Ordinance, Ordinance No. 109, *as amended by* Ordinance No. 122, art. II, § 201 (2011), https://www.hanovertwp.net/ZONING%20ORD%20.pdf. That would include structures like apartments, townhouses, and condominiums. But the Buchanans' farm is now zoned for rural residential use and was (at the time of the taking) zoned for rural preservation use, both of which allow only single-family dwellings. *Id.* art. V, § 501(A)(1)(g) (rural residential); *id.* art. IV, § 401(A)(1)(L) (rural preservation).

Granted, in Pennsylvania, finders of fact may value a property for a best use that is barred by current zoning designations. *Redevelopment Auth. v. Lieberman*, 336 A.2d 249, 255 (Pa. 1975); *see also* 26 Pa. Const. Stat. § 703 (providing that "[f]air market value" includes "[t]he highest and best *reasonably available use* of the property" (emphasis added)). But to do so, they must identify evidence that those designations are reasonably likely to change. *See Redevelopment Auth.*, 336 A.2d at 225.

Here, the Buchanans offered no evidence that Hanover Township would change course. On the contrary, the Township had previously rejected the Buchanans' requests for a zoning variance. Neither the Commission nor the District Court considered this problem in valuing the pre-taking best use.

Indeed, rather than denying the Commission's error, the Buchanans urge us—in a footnote—to dismiss the error as a harmless "technical misnomer." Appellees' Br. 18 n.8. We

8

cannot. The moniker "multi-family" appears alongside two of the Commission's three references to its favored best use. App. 96–97. It then explicitly based its valuation on that "multi-family residential and recreational use." App. 97–98.

Even if it had been more subtle, this error would still have tainted the Commission's pre-taking valuation and so changed the difference between the farm's pre- and post-taking best uses. After all, the Commission's pre-taking valuation was inflated by the farm's potential for multi-family development, a use that Rover's pipeline made less feasible. *See* App. 97–100. But that use was barred by Hanover's zoning designation, which was unlikely to change. That was clear error. So we will reverse and remand to let the District Court identify an appropriate pre-taking best use.

## IV. THE COMMISSION DID NOT CLEARLY ERR IN ITS POST-TAKING VALUATION

Rover objects to the Commission's post-taking valuation on two grounds. First, it rejects the notion that its easements actually burdened the Buchanans' development prospects. Second, it argues that the Commission let anti-pipeline rhetoric infect its analysis. Both objections fail. Because the Commission's post-taking valuation is "plausible in light of the record," we will affirm it. *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

### A. Rover's easements burdened the farm's development potential

The Commission found that Rover's easements burdened future development because Rover could veto future construction requests. That veto, it reasoned, would impair the property's value. Rover objects that the easements allow development and that it will likely grant construction requests, so downgrading the farm's value was too speculative. Not so.

9

Given Rover's past conduct and the easements' long lists of restrictions, the Commission's finding was not clearly erroneous.

1. *Rover has the power to veto construction requests*. Rover's permanent easement barred any use that might "materially interfere" with Rover's use, unless the Buchanans got Rover's "prior written permission." App. 68–69. That broad restriction gave Rover a veto over major structural changes, like building roads or buildings or drilling wells. It also covered cosmetic changes like "remov[ing] soil," altering a slope's grade, "impound[ing] surface water," or even "plant[ing] trees or landscaping." *Id.* at 68–69. If the Buchanans cannot plant a tree or level a dirt pile without Rover's permission, then development prospects are less certain than they would be without those restrictions. So the record supports the Commission's and the District Court's findings that Rover's easement would hamper development.

2. *Rover's past conduct shows that it has the will to veto construction requests*. At the valuation hearing, the Buchanans presented evidence that Rover had repeatedly denied their requests to build a road across the pipeline easement. True, when pressed at the hearing about allowing a road, Rover backpedaled, conceding it could not "unreasonably withhold its permission" to build over the easement. App. 726. But the Commission had leeway to give more weight to Rover's actions than to its words.

In sum, the Commission's post-taking valuation rested not on speculation but on objective evidence: the terms of Rover's easements and its past conduct. Plus, the Commission acknowledged that while the pipeline did not foreclose all future development, it at least

made development less certain. Because there was evidentiary support for the post-taking valuation, we will affirm it.

### B. Neither the Commission nor the District Court tied its post-taking valuation to anti-pipeline "stigma" evidence

During the valuation hearing, the Buchanans' expert "opined, based on a conversation with one unidentified developer, … [that] the presence of a pipeline" would guarantee that "no developer would invest in the property." App. 98. Rover argues that this testimony reflects a general, irrational fear of pipelines, as it is speculative. Fair enough. But that stray evidence made no difference. Rover has not shown that this testimony infected either the Commission's post-taking valuation or the District Court's reasoning.

Rather, the Commission implicitly rejected any testimony stigmatizing pipelines when it found that the farm, although burdened by limitations, could be developed. The District Court was even more explicit, "choos[ing] to disregard" the disputed testimony as speculative and unfounded. App. 25. So while the Buchanans' expert did express an unfounded fear, we cannot say that those fears infected the analysis of either the Commission or the District Court.

\* \* \* \* \*

The court-appointed Commission based its pre-taking valuation of the Buchanans' farm on a use that was barred by local zoning rules and did not explain why those rules would change. So we will reverse in part and remand for a new pre-taking valuation. But in objecting to the post-taking valuation, Rover is barking up the wrong tree: both the Commission and District Court reasonably found that the pipeline would reduce the farm's value,

11

and neither rested on a fear of pipelines. So we will affirm the Commission's post-taking valuation.