IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Forty Foot Farms,                      :
                    Appellant          :
                                       :
        v.                             :  Nos. 840, 841 and 842 C.D. 2019
                                       :  ARGUED: February 9, 2021
Pennsylvania Turnpike Commission       :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: March 2, 2021

In these consolidated appeals, Appellant Forty Foot Farms (Forty Foot) appeals from three orders issued by the Court of Common Pleas of Montgomery County (Trial Court) which pertained to Forty Foot's Petition for the Appointment of a Board of Viewers, two which granted Appellee Pennsylvania Turnpike Commission's (Commission) motions *in limine* regarding expert reports submitted by Forty Foot, and one which granted the Commission's motion for summary judgment.

## I. Facts and Procedural History

Forty Foot owns a parcel of land in Lansdale, Pennsylvania, (Property), which is the subject of the instant appeal. *See* Reproduced Record (R.R.) at 84a. "The Property . . . is triangular in shape and [is] located on the northeast side of Sumneytown Pike . . . at the intersection of Old Forty Foot Road." *Id.* at 68a. On the Property's west side is "the 309 Connector[,] which is a four-lane highway that connects Sumneytown Pike to State Route 309 to the north." *Id.* To the east is the Pennsylvania Turnpike's Northeast Extension, while "[o]n the north side, the

Property adjoins the southbound on- and off-ramps of the [Turnpike's] Lansdale [i]nterchange[.]" *Id.*

In 2006, Forty Foot filed an application with the Zoning Hearing Board of Towamencin Township (Zoning Board), through which it sought a special exception, as well as a number of use and dimensional variances, in furtherance of its desire to develop the Property. *Id.* at 84a-85a. Specifically, Forty Foot sought to build a 4,500-square-foot restaurant and a 3,700-square-foot bank, which would be supplemented by on-site parking. *Id.* at 89a. On January 4, 2007, the Zoning Board granted most of Forty Foot's application, with the exception of a single dimensional variance pertaining to the distance of the bank and associated parking spaces from a nearby body of water. *Id.* at 103a-04a. This grant was conditioned, in part, upon Forty Foot "offer[ing] the area of the [Property] designated as the 'FUTURE 309 CONNECTOR' for dedication to the [Commonwealth] for . . . 1 dollar[.]" *Id.* at 103a. Both Forty Foot and Towamencin Township appealed the Zoning Board's decision to the Trial Court in February 2007. *Id.* at 71a. There is no proof in the record establishing that Forty Foot or the Township ever briefed, orally argued, or discontinued their respective statutory appeals, nor is there proof that the Trial Court ever issued a decision or decisions on the merits.

On June 7, 2007, Forty Foot sought the Township's approval of a preliminary land development plan (Original Plan) for the Property, one which generally followed the contours of the relief granted by the Zoning Board, but which, according to Forty Foot, "required certain waivers." *Id.* at 71a-72a; Forty Foot's Br. at 6.[1] The Township's Board of Supervisors considered the Original Plan and voted to deny it on September 2, 2007. R.R. at 72a. Forty Foot then appealed to the Trial

---

[1] It is not clear from the record what these "certain waivers" entailed and neither party clarifies this issue in their respective appellate briefs.

Court on September 7, 2007, but, as with the appeals of the Zoning Board's decision, there is nothing in the record establishing that any further action has been taken regarding this denial. *Id.*

In September 2008, the Pennsylvania Department of Transportation condemned a portion of the Property, in furtherance of the 309 Connector project. *Id.* at 68a. It is unclear from the record how much of the Property was affected by this condemnation, but its effect was to reduce the Property's area to its current bounds of roughly 7.55 acres. *Id.* at 68a, 84a.

On January 3, 2011, the Commission filed a Declaration of Taking, through which it sought to condemn 2.453 acres of the Property for use in the reconstruction of a portion of the Pennsylvania Turnpike's Northeast Extension. Supplemental Reproduced Record (S.R.R.) at 312a-14a.[2] Forty Foot responded on June 9, 2015, by submitting a Petition for the Appointment of a Board of Viewers, pursuant to Section 502 of the Eminent Domain Code, 26 Pa. C.S. § 502.[3] S.R.R. at 327a-28a. Forty Foot and the Commission then presented a joint stipulation in May 2016, through which they agreed to have the matter resolved via jury trial, rather than

---

[2] Forty Foot filed this supplemental reproduced record, but did not adhere to the page numbering requirements set forth in the Pennsylvania Rules of Appellate Procedure. *See* Pa. R.A.P. 2173 ("Except as provided in [Pennsylvania] Rule [of Appellate Procedure] 2174 (tables of contents and citations), the pages of . . . any supplemental reproduced record shall be numbered separately in Arabic figures . . . followed . . . by a small b, thus 1b, 2b, 3b, etc."). Nevertheless, for simplicity's sake, we will cite to the supplemental reproduced record using the page numbers provided by Forty Foot.

[3] 26 Pa. C.S. § 502.

through a board of viewers, which was approved by the Trial Court.[4] *Id.* at 341a-43a.

Forty Foot subsequently secured an expert report authored by Thomas F. Oeste, Esquire (Oeste Report). Therein, Oeste stated that he believed the Trial Court would have affirmed the Zoning Board's January 2007 decision and reversed the Board of Supervisors' September 2007 denial of Forty Foot's Original Plan. R.R. at 22a-29a. As a result, Oeste concluded that "it is very likely that [Forty Foot] would have been able to obtain all approvals necessary to develop the Property in accordance with its [Original Plan]." *Id.* at 29a.

On April 14, 2017, the Commission filed a motion *in limine*, through which it sought to preclude Oeste from testifying at trial. The Commission argued that Oeste was not qualified to render an opinion regarding how the Trial Court would rule on the aforementioned statutory appeals, had provided no methodological basis in his Report for his conclusions, and only offered testimony that would be both highly prejudicial and not probative regarding the issues at hand. *Id.* at 7a-14a. The Trial Court granted this motion over Forty Foot's opposition on May 18, 2017, and used language in its order that barred Oeste from testifying at trial, but did not place any express restrictions on Forty Foot's ability to offer another expert's opinion for use at trial. *See id.* at 158a-59a.[5]

---

[4] This is permitted by Section 520(a) of the Eminent Domain Code, which states: "The condemnor and condemnee may, by written agreement filed with and approved by the court, waive proceedings before viewers and proceed directly to the court on agreed issues of law or fact. The proceedings shall then be the same as on appeal from a report of viewers." 26 Pa. C.S. § 520(a).

[5] The Trial Court's order states, in relevant part:

> [A]ttorney Oeste's testimony is precluded from trial for reasons including, but not limited to, the following:

On May 24, 2017, the Trial Court issued a scheduling order that, in relevant part, gave Forty Foot until July 22, 2017, to file its expert reports. Notably, this scheduling order made no mention of the Oeste preclusion order. *See id.* at 160a.

Thereafter, Forty Foot submitted an expert report authored by John Kennedy, AICP, (Kennedy Report), in which Kennedy considered a revised preliminary land development plan (Revised Plan) for the Property. *Id.* at 201a. This Revised Plan had not been submitted to the Township, but rather reflected the "review letters received from Township consultants and the variances previously granted [to Forty

---

1. Attorney Oeste's purported testimony is not probative of how the [T]rial [C]ourt or an appellate court would have disposed of the Township's appeal docketed at Montgomery County Docket Number 2007-02994 as the appeal was withdrawn by the Township making the underlying [Zoning] Board ruling the law of the case. Thus, Attorney Oeste's speculation that a trial/appellate court would have affirmed the [Zoning] Board's ruling is unnecessary since the [Zoning] Board's ruling presently stands.

2. Attorney Oeste's purported testimony is not probative of how the [T]rial [C]ourt or an appellate court would have disposed of Forty Foot['s] appeal docketed at Montgomery County Docket Number 2007-23790 as the appeal was not pursued to disposition prior to the declaration of taking, and to date, has been abandoned, making the underlying ruling by the Board of Supervisors . . . [regarding the Original P]lan the law of the case. Thus, Attorney Oeste's speculation that a trial/appellate court would have reversed the Board of Supervisors' ruling contradicts the posture and facts of record.

3. Given the specific procedural posture of the case *sub judice*, the proposed testimony of Attorney Oeste would be both contra the record and based upon facts not of record.

4. The proposed testimony of Attorney Oeste would not aid the fact finder because the best evidence, and most accurate evidence, is the record itself as it stands. Any speculative testimony inconsistent with the record would unnecessarily confuse the issues in the case.

R.R. at 158a-59a.

Foot by the Zoning Board]." *Id.* According to Kennedy, it was "more than reasonably probable and highly likely" that, had it been asked to do so, the Zoning Board would have granted variances to Forty Foot for the Revised Plan that were "similar" to those granted regarding the Original Plan. *Id.* at 199a-200a. Additionally, Kennedy asserted that "[t]he chief concerns [articulated in] the[se] review letters have been addressed in this [Revised P]lan and no waivers are necessary or required and [Forty Foot] would [have been] entitled to gain final approval [from the Board of Supervisors] as of right." *Id.* at 201a. Kennedy concluded that, had it not been for the Commission's condemnation of part of the Property, "it [was] more than reasonably probable that" Forty Foot would have been permitted to develop the Property in accordance with the Revised Plan. *Id.* at 202a.

On September 22, 2017, the Commission filed another motion *in limine*, through which it requested that the Trial Court preclude Kennedy from testifying at trial. The Commission argued that the Kennedy Report was "functionally identical" to the Oeste Report and, therefore, that it represented "an entirely transparent attempt to evade the import of the [Trial] Court's [May 18, 2017] order striking and precluding the Oeste Report and testimony of that nature." *Id.* at 166a-176a. The Trial Court heard oral argument regarding this second motion *in limine* on October 19, 2017, and granted the motion over Forty Foot's opposition on November 2, 2017.

Forty Foot then requested that the Trial Court certify its November 2, 2017 order for interlocutory appeal, but the Trial Court declined to do so. *See Forty Foot Farms v. Pa. Tpk. Comm'n* (Pa. Cmwlth., No. 501 C.D. 2018, filed April 2, 2019), slip op. at 4. On March 29, 2018, the parties entered a joint stipulation of judgment in favor of the Commission. *See* R.R. at 267a-69a. There is no evidence that the Trial Court approved this stipulated judgment; nevertheless, Forty Foot then used this

6

stipulation in an "attempt[] to circumvent the [T]rial [C]ourt and facilitate an immediate appeal of both the [May 18, 2017 o]rder and the [November 2, 2017 o]rder." *Forty Foot Farms*, slip op. at 4-6. Our Court quashed this appeal as interlocutory on April 2, 2019. *Id.* at 9.

On April 23, 2019, the Commission filed a motion for summary judgment. Therein, the Commission maintained it was entitled to judgment in its favor because Forty Foot's valuation expert had first "relied upon . . . the Oeste [R]eport and opinion, and then the Kennedy [R]eport and opinion, as the basis or foundation of his own expert opinion." R.R. at 285a. The Commission argued that the valuation expert's testimony was therefore speculative and inadmissible, given the Trial Court's rulings barring both Kennedy and Oeste from testifying, as well as Forty Foot's failure to offer admissible expert testimony regarding how the Property could have been developed. *Id.* at 283a-85a. Accordingly, as Forty Foot had failed to offer admissible valuation evidence, there was no genuine issue of material fact to submit to the factfinder regarding the value of Forty Foot's land that had been condemned by the Commission. *Id.* at 285a-86a. Forty Foot responded in opposition on May 9, 2019, after which the Trial Court granted the Commission's motion on May 15, 2019. These three appeals, one for each of the contested orders, followed.[6]

On June 7, 2019, the Trial Court ordered Forty Foot to file a concise statement of errors complained of on appeal. Forty Foot complied with this order on June 13, 2019. The Trial Court then issued an opinion in support of its rulings on August 20, 2019, in which, in relevant part, it explained its preclusion of Kennedy's testimony thusly:

---

[6] Our Court consolidated these appeals on July 23, 2019. *See* Commonwealth Ct. Ord., 7/23/19, at 1.

7

> By agreement, the [T]rial [C]ourt gave Forty Foot . . . permission to submit a new expert report to replace the precluded Oeste Report. The new report clearly had to be within the confines of the [Trial C]ourt's May 18, 2017[] order which precluded speculation on how the [T]rial [C]ourt would have ruled on the zoning appeals and precluded evidence going contra to the record. [The Kennedy R]eport violated the May 18, 2017[] order and was a repeat of the Oeste Report.
>
> . . . .
>
> The Kennedy . . . Report is not new; both the Oeste and Kennedy Reports address the same issue and render the same conclusion/opinion. Further, the . . . Kennedy Report violates the mandates of the [T]rial [C]ourt's May 18, 2017[] ruling by opining on the very issue that had been precluded therein.
>
> Further, to the extent that Forty Foot . . . argues that the [Kennedy R]eport was based on a new plan, the [T]rial [C]ourt did not give permission to submit a new plan, only a new report addressing the state of the record as it was.

Trial Ct. Op., 8/20/19, at 4-6.[7]

## II. Discussion

Forty Foot presents a number of arguments for our consideration, which we summarize as follows: First, the Trial Court erred by granting the Commission's motion *in limine* regarding Kennedy's expert testimony and Report, as both are admissible under well-settled case law and do not violate the terms of the Trial Court's May 18, 2017 order, which pertained to Oeste. Forty Foot's Br. at 15-24. Second, the Trial Court's May 18, 2017 order is legally erroneous, to the extent it can be construed as only allowing Forty Foot to offer evidence regarding the expressly authorized uses of the Property at the time of the Commission's

---

[7] Curiously, the Trial Court cited no law whatsoever in its opinion, with the exception of two passing references to Pennsylvania Rule of Appellate Procedure 1925(a). *See* Trial Ct. Op., 8/20/19, at 3-6.

Declaration of Taking. *Id.* at 22-23. Third, the Trial Court erred in granting the Commission's motion for summary judgment, as Kennedy's improperly precluded expert testimony and Report create genuine issues of material fact that should be submitted to the jury. *Id.* at 13.[8]

Under both the United States and Pennsylvania Constitutions, a landowner is entitled to just compensation in the event the government takes their property via eminent domain.[9] *Twp. of Chester v. Dep't of Transp.*, 433 A.2d 1353, 1355 (Pa. 1981). "The fundamental principle underlying the requirement of 'just compensation' is one of indemnity: a condemnee is entitled to be placed in as good a position pecuniarily as if [their] property had not been taken." *Id.* The definition of "just compensation" under Pennsylvania law is set forth in Section 702(a) of the Eminent Domain Code: "Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before

---

[8] When considering a trial court's ruling upon a motion *in limine*, our review is limited to determining whether the trial court abused its discretion. *Grimes v. Dep't of Educ.*, 216 A.3d 1152, 1159 (Pa. Cmwlth. 2019). "In order for an appellate court to find that the [lower] tribunal abused its discretion in making the evidentiary ruling, the appellate court must find that the ruling was manifestly unreasonable, partial, prejudiced, biased, based on ill-will, or lacks such support as to constitute a clear error." *Id.* "Further, discretion is abused [in the context of motions *in limine*] when the law is either overridden or misapplied." *Com. v. Hoover*, 107 A.3d 723, 729 (Pa. 2014); *accord Condemnation by Pa. Tpk. Comm'n v. Lands of Tarlini*, 185 A.3d 1177, 1182 (Pa. Cmwlth. 2018) ("The law is well-established that '[a] trial court is vested with wide discretion in deciding whether to allow the admission of expert testimony into evidence, and is not subject to reversal absent a clear abuse of discretion.' *Daddona v. Thind*, 891 A.2d 786, 805 (Pa. Cmwlth. 2006).").

When ruling upon a motion for summary judgment, a trial court must resolve all doubts against the movant, examining the record in the light most favorable to the non-moving party, and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). As with orders addressing the aforementioned evidentiary matters, our review of an order granting summary judgment is limited to determining whether the trial court's decision constituted an abuse of discretion or an error of law. *Salerno v. LaBarr*, 632 A.2d 1002, 1003 (Pa. Cmwlth. 1993).

[9] *See* U.S. CONST. amend. V and PA. CONST. art. I, § 10.

9

the condemnation and as unaffected by the condemnation and the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation." 26 Pa. C.S. § 702(a). Furthermore, per Section 703 of the Eminent Domain Code:

> Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration but not limited to the following factors:
>
> (1) The present use of the property and its value for that use.
>
> (2) The highest and best reasonably available use of the property and its value for that use.
>
> (3) The machinery, equipment and fixtures forming part of the real estate taken.
>
> (4) Other factors as to which evidence may be offered as provided by [26 Pa. C.S. §§ 1101-1106] (relating to evidence [in eminent domain proceedings]).

*Id.*, § 703.

The process of determining a property's highest and best use, for purposes of fair market value, is not restricted to contemplation of what uses were expressly allowed at the time of condemnation. As remarked by our Supreme Court,

> [i]n estimating the market value of the land[,] *everything* which gives it intrinsic value is a proper element for consideration. Land may be applied to various purposes and possesses value for distinct objects. It may be devoted to agriculture; improved by the erection of buildings or the opening of mines; or it may be adorned for the sole object of contributing to the pleasure or gratifying the taste of the owner. The construction of a railroad through it might utterly destroy its value for some purposes, and yet greatly increase it for others. It is its general market value for any purpose that will induce persons to purchase, which is the true test.

*Shenango & A.R. Co. v. Braham*, 79 Pa. 447, 453 (Pa. 1875) (emphasis added). To that end,

10

the condemnee is not limited to the present use of the property but may also offer testimony of the highest and best reasonably available use of the property at the time of taking. Testimony as to highest and best use, however, is subject to several limitations. Such testimony will not be admitted unless the condemnee has established that the tract in question is physically adaptable for such a use and that there is a market for property available for such use at the time of condemnation. . . . In addition, the condemnee must show that the need for property for such use is based upon more than mere speculation.

*Dep't of Transp. v. WWSW Radio, Inc.*, 383 A.2d 552, 554 (Pa. Cmwlth. 1978) (internal citation omitted); *accord Stoner v. Metro. Edison Co.*, 266 A.2d 718, 721 (Pa. 1970) ("[W]hile a property owner may expect compensation for reasonable certainties inherent in the present, he may not recover for remote chances or future possibilities and may not submit evidence to a jury based on a speculative contingency."); *Snyder v. Com.*, 192 A.2d 650, 652 (Pa. 1963) ("The property owner may show the highest and best use of his land, provided such use is not speculative or remote.").[10]

Returning to the matter at hand, we discern several flaws in the Trial Court's reasoning. First, contrary to the Trial Court's assertion that "both the Oeste and Kennedy Reports address the same issue and render the same conclusion/opinion[,]" Trial Ct. Op., 8/20/19, at 5, the Oeste Report speaks to a different development scenario than that of the Kennedy Report. The former was based upon Forty Foot's Original Plan, as well as Oeste's speculative conclusions regarding how the Trial Court would have ruled if called upon to decide the parties' respective appeals of the Zoning Board's 2007 decisions. *See* R.R. at 20a-29a. As for the latter, it was

_____

[10] We note that the *Snyder* Court also stated "[i]t is quite clear that one factor which strongly affects market value of property is zoning as it exists at the time of purchase or condemnation and as it may be changed in the reasonably near future to permit economically higher (or lower) use." 192 A.2d at 652.

11

predicated upon Kennedy's opinion that, absent the Commission's taking, there was a reasonable probability that Forty Foot would have been allowed to develop the Property in line with the Revised Plan. *See id.* at 199a-202a. Kennedy based this conclusion upon his interpretation of Forty Foot's by-right development abilities, as well as his belief that the Zoning Board would have likely granted variances to Forty Foot that were "similar" to those issued regarding the Original Plan. *See id.*

Second, though the Trial Court maintains that it "did not give permission [to Forty Foot] to submit a new plan, only a new report addressing the state of the record as it was[,]" this assertion is not supported by the record. The Trial Court's May 18, 2017 order merely addressed the Oeste Report's inadequacies, while also stating generally that "the best evidence, and most accurate evidence, is the record itself as it stands. Any speculative testimony inconsistent with the record would unnecessarily confuse the issues in the case." R.R. at 158a-59a. The Trial Court's May 24, 2017 scheduling order, as mentioned above, simply set the deadline by which Forty Foot was required to submit its expert reports. *Id.* at 160a. Neither of these orders, nor anything issued by the Trial Court prior to its August 20, 2019 opinion, explicitly discussed or placed preemptive limitations on the expert reports Forty Foot could submit or on what evidence those reports could be based.

Finally, even if the Trial Court had broadly prohibited Forty Foot from presenting expert reports that relied upon a new development plan, it would have done so in error. To reiterate, a condemnee may offer evidence regarding a property's highest and best use, unless that evidence is based on speculation or conjecture. *Stoner*, 266 A.2d at 721. The salient issue is not whether such evidence is "new," so to speak, but rather whether it rests upon solid factual conclusions or, instead, upon mere wishful thinking. A sweeping prohibition, such as the one

12

apparently envisioned (but not actually imposed) by the Trial Court, would run afoul of this distinction.

As already discussed, Kennedy stated in his Report that it was "more than reasonably probable that, absent the imminence of condemnation," Forty Foot would have received all necessary governmental dispensations and approvals for the Revised Plan, which would have enabled it to develop the Property accordingly. *See* R.R. at 199a-202a. Kennedy based this conclusion upon the particulars of the Property, his interpretation of the relevant Township ordinances, and the Township's handling of the Original Plan. *See id.* His Report was thus rooted not in speculation, but rather reasoned determinations and opinions of the type that should be considered and weighed by the factfinder. As such, the Trial Court erred by granting the Commission's September 22, 2017 motion *in limine* and thereby precluding Kennedy from testifying at trial. Furthermore, as Kennedy's expert opinion creates genuine issues of material fact regarding both the highest and best use of the Property and the value of the land condemned by the Commission, the Trial Court also erred by granting the Commission's motion for summary judgment.

## III. Conclusion

In light of the foregoing analysis, we reverse the Trial Court's November 2, 2017 order granting the Commission's motion *in limine* regarding Kennedy's expert testimony and Report, as well as the Trial Court's May 15, 2019 order granting the Commission's motion for summary judgment. In addition, we dismiss as moot Forty Foot's appeal of the Trial Court's May 18, 2017 order granting the Commission's

motion *in limine* regarding Oeste's expert testimony and Report. Finally, we remand this matter to the Trial Court for further proceedings consistent with this opinion.

_____

ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Forty Foot Farms,
               Appellant

      v.

Pennsylvania Turnpike Commission

:
:
:
:  Nos. 840, 841 and 842 C.D. 2019
:
:
:

# **O R D E R**

AND NOW, this 2nd day of March, 2021, it is hereby ORDERED that the Court of Common Pleas of Montgomery County's (Trial Court) November 2, 2017 and May 15, 2019 orders granting, respectively, Appellee Pennsylvania Turnpike Commission's (Commission) motion *in limine* regarding John Kennedy's expert testimony and expert report and the Commission's motion for summary judgment, are hereby REVERSED. It is FURTHER ORDERED that Appellant Forty Foot Farms' appeal of the Trial Court's May 18, 2017 order granting the Commission's motion *in limine* regarding Thomas F. Oeste's expert testimony and expert report is DISMISSED AS MOOT. It is FURTHER ORDERED that this matter is REMANDED to the Trial Court for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge